**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 14-cv-04644-JSR |
| Plaintiff, | ECF CASE |
| v. | |
| DARYL M. PAYTON, and BENJAMIN DURANT, III, | |
| Defendants. | |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO QUESTION DEFENDANT PAYTON REGARDING STATEMENTS IN HIS GUILTY PLEA COLLOQUY AND TO ESTOP PAYTON FROM OFFERING <u>CONTRADICTORY TESTIMONY OR ARGUMENT</u>**

SECURITIES AND EXCHANGE COMMISSION
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

## <u>TABLE OF CONTENTS</u>

BACKGROUND .............................................................................................................1

ARGUMENT ................................................................................................................3

I.    THE COMMISSION SHOULD BE ABLE TO ADMIT PRIOR STATEMENTS
      PAYTON MADE DURING HIS GUILTY PLEA COLLOQUY ......................................4

      A.    The Factual Admissions Payton Made During his Plea Colloquy are
            Relevant and Admissible ...........................................................................4
      B.    Payton's Guilty Plea Admissions Should Not be Barred by Rule 403 ...................5
      C.    Federal Rule of Evidence 410 is Inapplicable Because Payton did not Withdraw
            his Guilty Plea

II.   IF THE COURT DECIDES PAYTON'S GUILTY PLEA STATEMENTS ARE
      INADMISSIBLE, THE COMMISSION SHOULD BE PERMITTED TO USE THEM
      FOR IMPEACHMENT ......................................................................................8

III.  PAYTON SHOULD BE ESTOPPED FROM CONTRADICTING HIS PRIOR SWORN
      STATEMENTS AT TRIAL ...............................................................................10

CONCLUSION.............................................................................................................14

i

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Bates v. Long Island R.R. Co.*, 997 F.2d 1028 (2d Cir.),
    *cert. denied*, 510 U.S. 992 (1993) ..................................................................................11, 12

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533 (1991) .......................6

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993) ...............................................11

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616 (2d Cir. 2012)..................................................11

*Lewis v. Baker*, 526 F.2d 470 (2d Cir. 1975).....................................................................................4

*Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1 (2d Cir. 1999) ......................................11

*New Hampshire v. Maine*, 532 U.S. 742 (2001)....................................................................11, 12, 13

*Pierce County, Wash. v. Guillen*, 537 U.S. 129 (2003) ....................................................................6

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627 (2d Cir. 1994) ..........................5

*Scarano v. Central R. Co.*, 203 F.2d 510 (3d Cir. 1953) .................................................................13

*SEC v. Berger*, 244 F. Supp. 2d 180 (S.D.N.Y. 2001)
    *aff'd*, 322 F.3d 187 (2d Cir. 2003)..............................................................................................5

*SEC v. Reserve Management Company, Inc.*, No. 09-cv-4346,
    2013 U.S. Dist. LEXIS 141018 (S.D.N.Y. Sept. 30, 2013)........................................................12

*United States v. Amato*, No. 03-cr-1382, 2006 U.S. Dist. LEXIS 43366
    (E.D.N.Y. June 27, 2006) .............................................................................................................9

*United States v. Frederick*, 702 F. Supp. 2d 32 (E.D.N.Y. 2009) ...................................................4

*United States v. Kot*, No. 2:10-cr-280, 2012 WL 1657118 (D. Nev. May 10, 2012) ."),
    *aff'd*, 583 F. App'x 716 (9th Cir. 2014)......................................................................................9

*United States v. Lawson*, 683 F.2d 688 (2d Cir. 1982)............................................................7, 9

*United States v. Magnan*, No. 14-7027, 2015 U.S. App. LEXIS 13053
    (10th Cir. July 28, 2015).........................................................................................................7, 8

*United States v. Mezzanatto*, 513 U.S. 196 (1995) ........................................................................6

**CASES (cont.)**                                                    **PAGE(S)**

*United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) ...................................................2

*United States v. Payton*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 16263
    (S.D.N.Y. Jan. 22, 2015)...........................................................................................2

*United States v. Salerno*, 974 F.2d 231 (2d Cir. 1992).................................................6

*United States v. Stadtmauer*, 620 F.3d 238 (3d Cir. 2010)............................................9

*United States v. Whitmore*, 359 F.3d 609 (D.C. Cir. 2004) ...........................................5

*U.S. v. Udeagu*, 110 F.R.D. 172 (E.D.N.Y. 1986)..........................................................9

**RULES, STATUTES, OTHER AUTHORITIES**

Fed. R. Crim. P. 11, Advisory Committee Notes
    (1979 Amendments, Note to Subdivision (e)(6)) .................................................7

Fed. Rule of Crim. P. 11(e).............................................................................................7

Fed. R. Evid. 102 ........................................................................................................9, 10

Fed. R. Evid. 402 ........................................................................................................4, 11

Fed. R. Evid. 403 ...............................................................................................................5

Fed. R. Evid. 410 ...................................................................................................... *passim*

Fed. R. Evid Rules 411(e)(6) ...........................................................................................6

Fed. R. Evid Rule 608(b) .........................................................................................4, 5, 8

Fed. R. Evid. 611 ..............................................................................................................4

Fed. R. Evid. 613 ..............................................................................................................4

Fed. R. Evid. 801(d)(2) ................................................................................................4, 5

The Securities and Exchange Commission ("Commission") hereby moves *in limine to*: 1) admit statements defendant Daryl M. Payton made in his guilty plea colloquy and question him on those statements; in the alternative; 2) allow questioning based on those statements for the purposes of impeachment; and to 3) estop Payton from testifying or arguing in a manner contradictory to those statements.

## BACKGROUND

On June 25, 2014, the Commission filed the initial Complaint alleging that Payton violated federal securities law by using material nonpublic information to trade in SPSS securities prior to its acquisition by IBM.  On October 29, 2014, a grand jury sitting in the Southern District of New York returned an indictment charging Payton with conspiracy to commit securities fraud and three counts of securities fraud, based on the same facts alleged in the Complaint (and in the subsequently filed Amended Complaint).  *United States v. Payton*, 12 Cr. 887 (ALC).

On November 6, 2014, Payton pled guilty to conspiracy to commit securities fraud.  At this guilty plea hearing, Payton admitted under oath:

> In July of 2009 I was working as a stockbroker for a brokerage firm in Manhattan. One of the brokers at the brokerage firm told me his roommate told him that IBM would soon be acquiring a software company called SPSS at a specific price per share and that we should invest in this stock.  I understood that once this acquisition was announced, the price of SPSS shares would rise dramatically.  I purchased, from Manhattan, on a national securities exchange, options of SPSS based on this information.  After the deal was announced I sold my options for a profit.  Given the specificity of the information, it was apparent that this information was obtained in a breach of fiduciary duty.  In other words, I understood that this was inside information that was supposed to be kept confidential and that it was illegal for me to trade on.

*United States v. Payton*, Crim. No. 12-cr-887 (ALC), Nov. 6 2014 Tr. at 28-29, Ex. 7.[1]  Based on

these factual admissions, the court accepted Payton's guilty plea and scheduled a sentencing

hearing.  *See United States v. Payton*, Crim. No. 12-cr-887 (ALC), Nov. 18, 2014 Tr. at 5, Ex. 8.

Thereafter, the United States Court of Appeals for the Second Circuit issued its opinion

in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014).  Payton then filed a motion to vacate

his guilty plea (as did others).  In doing so, he argued that his admitted facts were not sufficient

to establish criminal liability in light of the *Newman* decision because he did not admit that he

knew of a benefit.  *See* Mem. in Support of Daryl Payton's Motion to Vacate his Guilty Plea at

2-4, Ex. 9.  He based this entire argument on his admitted facts, stating in the opening paragraph,

"Mr. Payton admitted at his plea allocution on November 6, 2014 that he received a tip from a

fellow broker who received it form his roommate."  *Id.* at 2.

Payton was successful in maintaining that position.  On January 22, 2015, the court

accepted Payton's argument based on those facts and vacated his guilty plea.  The court stated

that it was following its initial inclination that based on the opinion in *Newman* "as well as all the

facts in the record with respect to the guilty pleas of Defendants Thomas Conradt, David

Wesihaus, Trent Martin and Daryl Payton," the pleas should be vacated because there was not a

sufficient factual basis based on *Newman's* "clarification" of the elements of criminal tippee

liability.  *United States v. Payton*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 16263 (S.D.N.Y. Jan.

22, 2015).

On May 8, 2015, Payton appeared for a deposition in this case and offered incredible

testimony that directly contradicted the sworn admissions he had made only six months before

---

[1]     All exhibits referenced herein are exhibits to the Declaration of A. Kristina Littman in
Support of Securities and Exchange Commission's Motions *in Limine*.

during his guilty plea colloquy on four key issues.  First, Payton testified that he did not recall who told him that SPSS was the target of a buyout:

> Q:      Okay.  Before you traded, were you told that the target entity was SPSS?
>
> A:      SPSS was the stock, yes.
>
> Q:      And who told you?
>
> A:      I don't recall.  I just became generally aware.

 Payton Dep. Tr. 195:5-13, Ex. 1.

Second, Payton testified that he did not know where Conradt's information about SPSS came from:

> Q:      Did Tom . . . ever tell you where [he was] getting information about SPSS?
>
> A:      No.

Payton Dep. Tr. 174:11-19, Ex. 1.[2]

Third, Payton testified that he was not told the specific price IBM was going to pay for SPSS shares.  *Id.* at 193:18-194:2.  And fourth, Payton testified that "I can't say that in making the trades that I felt like I was doing something illegal."  *Id.* at 210:1-3.

Remarkably, when confronted with his earlier sworn statements, Payton refused to testify truthfully.  Payton reviewed the transcript of his guilty plea colloquy and testified repeatedly that it did not refresh his recollection about key facts which he had acknowledged knowing only six months before.  *Id.* at 298:24-301:8.

---

[2]      Payton also testified, when asked if Conradt had told him that the source was his roommate, that he did not recall.  Payton Dep. Tr. 197:8-198:21, Ex. 1.

## ARGUMENT

Payton's deposition testimony demonstrates that he is willing to lie to avoid liability. Accordingly, the Commission should be permitted to: 1) admit the admissions he made during his plea colloquy and question him on those statements; 2) impeach Payton with questions based on the statements made during his guilty plea colloquy should he testify differently; and 3) Payton should be estopped from providing perjurious testimony or misleading argument.

## I.   THE COMMISSION SHOULD BE ABLE TO ADMIT PRIOR STATEMENTS PAYTON MADE DURING HIS GUILTY PLEA COLLOQUY.

### A. The Factual Admissions Payton Made During his Plea Colloquy are Relevant and Admissible.

Unless otherwise prohibited by rule, statute, or the Constitution, relevant evidence is admissible. Fed. R. Evid. 402. Evidence that goes to a witness's credibility, such as the evidence proffered here, is highly relevant as it assists the jury in their critical role determining whether or not a witness is to be believed. *Lewis v. Baker*, 526 F.2d 470, 475 (2d Cir. 1975) ("The relevancy of testimony which aids in the jury's determination of a party's credibility and veracity has been repeatedly affirmed."). Additionally, various rules specifically support the relevancy and admissibility of such evidence. *See* Fed. R. Evid. 608(b) (inquiry into a witness's prior conduct is relevant if it goes to the witness's character for untruthfulness), 611 (permissible scope of cross-examination includes "matters affecting the witness's credibility"), and 613 (extrinsic evidence of a witness's prior inconsistent statement is admissible so long as the witness is given an opportunity to explain or deny the statement). Moreover, Federal Rule of Evidence 801(d)(2) provides an explicit exception from the hearsay prohibition when a statement is that of a party opponent. That rule would plainly apply to Payton's statements during his plea colloquy. *United States v. Frederick*, 702 F. Supp. 2d 32, 35-36 (E.D.N.Y. 2009).

4

The type of evidence at stake here, Payton's admissions of critical facts, is particularly probative.  First, these admissions prove Payton's knowledge of the relationship between Conradt and Martin (the tipper).  Second, they indicate that Payton likely lied under oath either during his deposition testimony or during his earlier guilty plea colloquy.  *See United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004) ("Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath.").

The Commission should be permitted to admit and question Payton regarding his sworn statements pursuant to Rule 801(d)(2) of the Federal Rules of Evidence.  *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994) ("[a]ssertions by a party . . . are admissible against it as admissions"); *SEC v. Berger*, 244 F. Supp. 2d 180, 189 (S.D.N.Y. 2001) (finding defendant's "own statements at his plea allocution" to be admissions under Rule 801(d)(2)(A)), *aff'd*, 322 F.3d 187 (2d Cir. 2003).  Moreover, if Payton's testimony at trial is inconsistent with his plea colloquy, in accordance with Rule 608 the Commission should be permitted to impeach him by questioning him regarding his prior statements.

### B.  Payton's Guilty Plea Admissions Should Not be Barred by Rule 403.

To be clear, the Commission seeks to admit the *factual statements* made by Payton during his plea colloquy.  It does not seek to introduce the fact that Payton was charged criminally, signed a plea agreement, or pled guilty and provided a plea colloquy.  Instead, the Commission seeks to read the colloquy, or portions thereof, into evidence as admissions of a party opponent with the simple preface that the admissions are statements that Payton made to a court under oath.  The probative value of these admissions is enormous.  Under the Commission's proposal, defendants will not suffer any undue prejudice and these admissions should not be precluded under Rule 403.

### C.  Federal Rule of Evidence 410 is Inapplicable Because Payton did not Withdraw his Guilty Plea.

Federal Rule of Evidence 410 provides, in relevant part, that "evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussion: (1) a guilty plea that was later withdrawn . . . (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure." But quite simply, the guilty plea here was not "withdrawn."  It was vacated.  For this reason alone, this rule does not prevent the admission of Payton's guilty plea admissions.

The Federal Rules are to be interpreted based upon their plain meaning.  *United States v. Salerno*, 974 F.2d 231, 238 (2d Cir. 1992) (noting that "[t]he Supreme Court has made clear in recent years that the Federal Rules of Evidence are to be treated like any other statute; that is, they are to be read with regard to their 'plain meaning'").  Thus, "[a]s with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 540-41 (1991).  Moreover, because Rule 410 is a rule of evidentiary privilege that excludes otherwise reliable evidence, it must be narrowly construed.  *See United States v. Mezzanatto*, 513 U.S. 196, 205 (1995) ("Rules 410 and 11(e)(6) 'creat[e], in effect, a privilege of the defendant'"); *see also Pierce County, Wash. v. Guillen*, 537 U.S. 129, 144-45 (2003) ("We have often recognized that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth.").

The word "withdrawn" has a particular legal meaning.  It does not mean every form of vacated or overruled guilty plea.  Indeed, Federal Rule of Criminal Procedure 11(d) identifies specific circumstances when a guilty plea may be "withdrawn."   Importantly, each of those discusses the scenario as to when the party is permitted to withdraw his or her guilty plea.  This

makes clear that the person who may "withdraw" a guilty plea is the party.  A court does not

"withdraw" guilty pleas.[3]  In this case, Payton moved the court to "vacate" his guilty plea, and

the court granted that relief.

In addition, allowing a vacated guilty plea (as opposed to a withdrawn guilty plea) to be

admitted is not inconsistent with the rationale and purpose of Rule 410.  That rule exists to

encourage "unrestrained candor" in plea discussions and for the "promotion of disposition of

criminal cases by compromise."  *See* Fed. R. Evid. 410, Advisory Committee Notes (1972

Proposed Rules) (quoted in Fed. R. Crim. P. 11, Advisory Committee Notes (1979 Amendments,

Note to Subdivision (e)(6))).  Accordingly, a defendant who discusses a guilty plea or who

pleads guilty is not penalized if he later changes his mind.  *See, e.g.*, *United States v. Lawson*,

683 F.2d 688, 690 (2d Cir. 1982) (where defendant "suggested a 'deal'" and then claimed

innocence throughout trial).

But this rationale has no import in a case like this where a guilty plea is vacated because

of a perceived change in the law.  Payton made no effort to back away from the factual assertions

he made in his plea colloquy.  To the contrary, he used those same factual assertions in order to

secure the order vacating the plea.  Only in this subsequent case has he changed his factual

position.

This case obviously presents a rather uncommon scenario – where the trial court

perceives a change in the law between the acceptance of a plea and sentencing.  Thus, few courts

have been called upon to interpret Rule 410 in similar circumstances.  However, in a recent case

the Tenth Circuit considered a somewhat similar scenario.  *United States v. Magnan*, No. 14-

---

[3]     Indeed, when discussing what happens when a plea is attacked on appeal or collaterally, the rules discuss the plea being "set aside" – not "withdrawn."  *See* Fed. Rule of Crim. P. 11(e).

7027, 2015 U.S. App. LEXIS 13053, *2 (10th Cir. July 28, 2015).  In *Magnan* the court made clear that "withdrawn" is not the same as "vacated," stating: "[w]e do not hold hat Rule 410(a) applies whenever a conviction is vacated."  *Id.* at *10.  While the court in *Magnan* ultimately held that defendant's prior guilty plea was not admissible, the facts of that case are distinguishable.  In *Magnan* a state court guilty plea and conviction were later invalidated due to a lack of jurisdiction, which the court held qualified as a withdrawal.  *Id.*  But there was no question about proper jurisdiction or procedures in the Payton criminal matter.  Instead, the court simply determined that the factual basis was insufficient to support the criminal charge.  This is not a "withdrawn" plea, and Rule 410 does not apply.  Payton's statements in the plea colloquy should be deemed admissible.

## II.    IF THE COURT DECIDES PAYTON'S GUILTY PLEA STATEMENTS ARE INADMISSIBLE, THE COMMISSION SHOULD BE PERMITTED TO USE THEM FOR IMPEACHMENT.

Even if the Court rules that statements made during Payton's plea colloquy may not be admitted into evidence, the Commission should not be precluded from pursuing this line of questioning to impeach Payton.  Rule 410 of the Federal Rules of Evidence only prevents the *admission* of certain statements.  However, the Federal Rules of Evidence acknowledge that just because a particular piece of evidence may not be admissible does not preclude posing questions to the witness based on that evidence.  *See, e.g.*, Fed. R. Evid. 608(b) (though extrinsic evidence of witness's prior conduct is not admissible to attack the witness's character for truthfulness, courts may "allow [it] to be inquired into").

Here, if the statements are ruled inadmissible, the Commission seeks only to be permitted

to impeach Payton through questions regarding those statements.[4]  By way of analogy, the

procedure would be similar to how criminal defendants use FBI notes summarizing meetings

with government witnesses (or "302s") to cross-examine those government witnesses.  Though

the 302s themselves are not admissible because they contain the FBI's characterizations of what

the witness supposedly said, courts routinely allow defendants to confront witnesses with

purported statements reflected in a 302, and to cross-examine them on the content of these

statements.  *See United States v. Stadtmauer*, 620 F.3d 238, 267 (3d Cir. 2010) (noting that the

District Court permitted the defendant to cross-examine a witness on the content of his

statements while refusing to admit the 302s themselves); *United States v. Amato*, No. 03-cr-

1382, 2006 U.S. Dist. LEXIS 43366, *15-16 (E.D.N.Y. June 27, 2006) (defendant properly

confronted the witness with and asked about the "purported statements that the 302's suggest that

he made," even though the 302s themselves were not admissible); *United States v. Kot*, No. 2:10-

cr-280, 2012 WL 1657118, at *2 (D. Nev. May 10, 2012) ("Defendant is free to ask a witness

whether he or she made a statement that is reflected in an FBI 302.  However, if the defense is

not satisfied with the witness's answer, Defendant may not publish or introduce the contents of

the 302 as a prior inconsistent statement."), *aff'd*, 583 F. App'x 716 (9th Cir. 2014).  The

---

[4]      The Commission is aware of cases in this Circuit that hold that Rule 410 applies even
when the evidence is offered for impeachment purposes.  *United States v. Lawson*, 683 F.2d 688,
692-93 (2d Cir. 1982); *U.S. v. Udeagu*, 110 F.R.D. 172, 174-75 (E.D.N.Y. 1986).  However,
those cases address whether particular statements are *admissible* for impeachment purposes, not
whether impeachment questions can be based upon these statements.  In this section of this
memorandum, the Commission is not proposing that the Payton's guilty plea or plea colloquy
transcript be admitted, just that the Commission be permitted to question Payton regarding these
admissions.  Furthermore, it is worth noting that both *Lawson* and *Udeagu* are criminal cases,
and the court in *Udeagu* specifically noted that the additional tools available to prosecutors in a
criminal proceeding provided comfort that its ruling would not give the defendant license to
falsely testify without consequence.  *See Udeagu*, 110 F.R.D. at 175 ("the distinct possibility that
the court will consider perjury in sentencing precludes all but the most foolish defendant from
lying under these circumstances").

Commission respectfully submits that it should be permitted to impeach Payton using the same procedure:  by asking him questions based on the plea colloquy without admitting the plea colloquy itself.

Nothing in Rule 410 prohibits a party from impeaching a witness by questioning him or her regarding sworn statements made during a plea colloquy, where those statements are not admitted into evidence, and such a prohibition should not be read into the rule.  As a general matter, the Federal Rules of Evidence must be construed so as to "promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Fed. R. Evid. 102.  To read into Rule 410 restrictions that prevent the Commission from even questioning Payton regarding his prior statements, leaving the Commission without recourse and Payton free to present perjurious testimony to the jury, would certainly not promote the ascertainment of truth.  Since this line of questioning is clearly relevant – not to mention highly probative – and is not otherwise prohibited, it should be permitted.  *See* Fed. R. Evid. 402.

## III.  PAYTON SHOULD BE ESTOPPED FROM CONTRADICTING HIS PRIOR SWORN STATEMENTS AT TRIAL.

The Commission also respectfully requests that Payton be precluded from offering testimony that contradicts the sworn statements from his guilty plea colloquy.  Particularly if the Commission is not permitted to admit his prior statements, Payton should not be allowed to take advantage of such a scenario and present perjurious testimony with impunity.[5]  Furthermore,

---

[5]     Though Rule 410 of the Federal Rules of Evidence provides that Payton's sworn statements made during his plea colloquy would be admissible in a criminal proceeding for perjury, Fed. R. Evid. 410(b)(2), a hypothetical perjury charge would have no bearing on the outcome of or relief sought in this case.  Furthermore, the Commission has no authority to bring such criminal charges and cannot control whether Payton would be subsequently prosecuted if he were to commit perjury.

pursuant to the doctrine of judicial estoppel, such flipping of positions to gain an unfair advantage should not be tolerated by this Court.

The equitable doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied*, 510 U.S. 992 (1993)).  The purpose of the doctrine is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  Essentially, the doctrine's purpose is to "raise[] the cost of lying." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 14228 (7th Cir. 1993).

Though the circumstances under which the doctrine may be invoked are "not reducible to any general formulation of principle," *New Hampshire*, 532 U.S. at 750, courts generally look for three factors:  "(1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51).  All three factors are present here.

First, if Payton were to testify in accordance with his deposition testimony, that would be "clearly inconsistent" with his earlier position in the criminal case.  At his guilty plea hearing, Payton stated under oath that (1) Conradt told him that IBM would be acquiring SPSS, (2) Conradt told him that this information came from his roommate (Trent Martin), (3) Conradt told

him the specific price per share at which SPSS would be acquired, and (4) he understood that this information was inside information and that it was illegal for him to trade on it.  If Payton testifies consistent with his deposition testimony, he would now claim under oath that: (1) he does not know who told him that IBM would be acquiring SPSS, (2) Conradt never told him where the information regarding SPSS was coming from, (3) Conradt never told him the specific price per share offered for SPSS, and (4) when he traded based on this information he did not feel like he was doing something illegal.  On these four separate factual issues Payton is now taking a clearly inconsistent position than he took while under oath at his guilty plea hearing, and such an about-face should be prohibited.

Second, Payton persuaded the court in the criminal matter to accept his earlier position.  That the plea was later vacated is of no moment.  The law is clear that judicial estoppel applies not only based on the ultimate "outcome" of the case, but whenever a party's factual position has "been adopted by the court in some manner."  *See Bates*, 997 F.2d at 1038; *see also SEC v. Reserve Management Company, Inc.*, No. 09-cv-4346, 2013 U.S. Dist. LEXIS 141018, *61 (S.D.N.Y. Sept. 30, 2013) (applying judicial estoppel based on a position used to defeat a discovery motion – even where that party ultimately lost on the merits).  But here, Payton's factual statements during the colloquy directly influenced the outcome of the case.  Indeed, it also formed the basis for the court's ruling that Payton's plea should be vacated.  As noted above, Payton's entire argument in his motion to vacate was that the admitted facts – including that he knew only that the source was Conradt's roommate – were not sufficient to meet the *Newman* standard for what a defendant must "know" about the benefit and breach in a criminal case.  And the court accepted that argument and did what Payton wanted – vacated the plea based on a finding that the admitted facts did not meet "personal benefit and tippee knowledge

12

requirements."  Thus it was those facts that were integral to the successful outcome of the case for Payton.

      Since judicial estoppel is a doctrine meant to preserve "the integrity of the judicial process," this factor ensures that judicial estoppel is applied where the party "has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  *New Hampshire*, 532 U.S. at 750.  Allowing Payton to present a completely inconsistent factual position here than he used in the criminal proceeding to secure the order vacating the plea would certainly create the perception that he either misled the first court or that he is misleading the second court here by presenting false testimony.

      Finally, Payton would derive an unfair advantage if not estopped, for if the Commission is restricted in its ability to admit Payton's admissions or to impeach Payton based on his prior guilty plea colloquy, Payton will be able to testify falsely without consequence in this matter.  In the criminal case, Payton asked a court to accept one factual position in order to gain the benefit of a guilty plea, and then, when he perceived the law had changed, to have it vacated.  Now, he is trying to present this Court with opposite (and likely false) factual positions in the hopes that he can take advantage of the jury's ignorance of his earlier guilty plea and escape liability in this matter.  For all of the above reasons, judicial estoppel is warranted here to prevent Payton from playing "fast and loose with the courts."  *New Hampshire*, 532 U.S. at 750 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)).

## <u>CONCLUSION</u>

For these reasons, the Commission respectfully requests that the Court enter an order allowing the Commission to admit the facts Payton admitted during his guilty plea and colloquy, and allow them to be used for impeachment purposes.  In addition, the Commission seeks a ruling that Payton should be estopped from offering any argument or testimony that contradicts sworn admissions made in his guilty plea colloquy in the prior proceeding.


Dated:  September 14, 2015                    Respectfully Submitted,



SECURITIES AND EXCHANGE COMMISSION



s/_____

David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
Counsel for Plaintiff
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

14