# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **Civil Action No. 14-cv-04644-JSR** |
| **Plaintiff,** | **ECF CASE** |
| **v.** | |
| **DARYL M. PAYTON, and BENJAMIN DURANT, III,** | |
| **Defendants.** | |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT DAVID WEISHAUS'S FIFTH AMENDMENT ASSERTION AND HIS STATEMENTS AGAINST INTEREST, AND REQUEST FOR AN ADVERSE INFERENCE INSTRUCTION**

SECURITIES AND EXCHANGE COMMISSION
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................2

I.     CONRADT PROVIDED SPECIFIC MATERIAL, NONPUBLIC INFORMATION TO
DEFENDANTS THAT HE EXPRESSLY ATTRIBUTED TO HIS ROOMMATE..........2

II.    DEFENDANTS CONTRADICT CONRADT'S TESTIMONY .......................................3

III.   AFTER THE SPSS ANNOUNCEMENT DEFENDANTS MET WITH
WEISHAUS AND OTHERS TO PLAN A RESPONSE TO INQUIRIES
REGARDING THEIR TRADING .....................................................................................3

IV.   WEISHAUS WAS INDICTED, PLED GUILTY, AND COOPERATED
WITH AUTHORITIES......................................................................................................4

V.    WEISHAUS HAS REPEATEDLY INVOKED THE FIFTH AMENDMENT AND
REFUSED TO TESTIFY ..................................................................................................6

ARGUMENT .......................................................................................................................8

I.     THE COURT SHOULD ADMIT WEISHAUS'S FIFTH
AMENDMENT TESTIMONY ........................................................................................8

II.    ADMISSION OF WEISHAUS'S TESTIMONY AND AN ADVERSE INFERENCE
INSTRUCTION IS WARRANTED UNDER THE *LIBUTTI* ANALYSIS ......................9

        A.    Defendants and Weishaus Shared a Close Relationship as Friends, Colleagues,
and Co-conspirators ...........................................................................................10
        B.    Weishaus's Interests Are Perfectly Aligned with Defendants.............................12
        C.    Weishaus Plays a Significant Role in the Litigation.............................................13

III.   BECAUSE WEISHAUS IS "UNAVAILABLE" HIS STATEMENTS AGAINST
INTEREST ARE ADMISSIBLE UNDER RULE 804(b)(3) ...........................................13

        A.    Weishaus's Guilty Plea Colloquy is Admissible ..................................................14
        B.    Weishaus's Statements to Law Enforcement are Admissible...............................15
        C.    The Probative Value of these Statements Greatly Exceeds
any Unfair Prejudice ...........................................................................................15

CONCLUSION.....................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                          <u>PAGE(S)</u>

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)...................................................................9

*Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983) ....................................9

*Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471
   (8th Cir. 1987)..........................................................................................................8, 9

*Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014)................................9, 10

*FDIC v. Fidelity & Deposit Co. of Md.*, 45 F.3d 969 (5th Cir. 1995) .............................9

*In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 Bankr. LEXIS 1925
   (Bankr. S.D.N.Y. Apr. 17, 1998).................................................................................12

*LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997) ........................................ *passim*

*Rad Services, Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271 (3d Cir. 1986) ..................9

*SEC v. Durante*, Civ. Act. No. 2013 U.S. Dist. LEXIS 178351 (S.D.N.Y. Dec. 19, 2013)...........9

*State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 U.S. Dist. LEXIS 6837
   (N.D. Ill. May 11, 2000) ............................................................................................11

*United States v. Bakhtiar*, 994 F.2d 970 (2d Cir. 1993) ...............................................13

*United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*,
   55 F.3d 78 (2d Cir. 1995)...........................................................................................10

*United States v. Conradt*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 1626
   (S.D.N.Y. Jan. 22, 2015)..............................................................................................6

*United States v. District Council of New York City and Vicinity of United Broth. of Carpenters
   and Joiners of America.*, 832 F. Supp. 644 (S.D.N.Y. 1993) .................................11

*United States v. Garris*, 616 F.2d 626 (2d Cir. 1980)...................................................15

*United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989) ........................................15

*United States v. Matthews*, 20 F.3d 538 (2d Cir. 1994).................................................13

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ....................................................8

**CASES (cont.)**                                                          **PAGE(S)**

*United States v. Scopo*, 861 F.2d 339 (2d Cir.1988)......................................................................14

*United States v. Stratton*, 779 F.2d 820 (2d Cir. 1985) ...............................................................15

*United States v. Williams*, 927 F.2d 95 (2d Cir. 1991) ...........................................................13, 14

*United States v. Winley*, 638 F.2d 560 (2d Cir. 1981) ................................................................14

## RULES, STATUTES, OTHER AUTHORITIES

Fed. R. Evid. 401 ...............................................................................................................................8

Fed. R. Evid. 403 ..........................................................................................................................8, 9

Fed. R. Evid. 410 .............................................................................................................................15

Fed. R. Evid. 801(d)(2) ....................................................................................................................11

Fed. R. Evid. 804(a)(1)(b)(3) .........................................................................................1, 13, 14, 15

Fed. R. Evid. 804(3)(B) ............................................................................................................. 14-15

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in Support of its Motion *In Limine* to Admit David Weishaus's Fifth Amendment Assertion and His Statements Against Interest, and Request for an Adverse Inference Instruction.  The Commission intends to call Weishaus as a witness at trial with the expectation that he will invoke the Fifth Amendment and refuse to testify.

The evidence introduced at trial will show that Weishaus was a friend and colleague of defendants Daryl M. Payton and Benjamin Durant, III, and was the first person to whom Thomas Conradt tipped material inside information about the SPSS acquisition.  The evidence will also show that Weishaus conspired with defendants to minimize scrutiny about their SPSS trading.

Weishaus's Fifth Amendment assertion during the investigation and at his deposition, and his expected Fifth Amendment assertion at trial, deprives the Commission of critical testimony. As demonstrated below, because of Weishaus's friendship with both defendants and involvement in the events underlying this litigation, his testimony should be admitted and an adverse inference instruction is warranted.  *LiButti v. United States*, 107 F.3d 110, 120-24 (2d Cir. 1997). Accordingly, the Commission respectfully requests that this Court admit Weishaus's Fifth Amendment assertion and instruct the jury that they may use that testimony to draw an adverse inference against defendants.[1]

Additionally, because Weishaus will be "unavailable," the Commission seeks to admit into evidence certain statements Weishaus made outside of court pursuant to Rule 804(a)(1), (b)(3) of the Federal Rules of Evidence.

---

[1]      All exhibits referenced herein are exhibits to the Declaration of A. Kristina Littman in Support of Securities and Exchange Commission's Motions *in Limine*.  A proposed "Adverse Inference Instruction" is attached thereto as Ex. 18.

## BACKGROUND

I.    **CONRADT PROVIDED SPECIFIC MATERIAL, NONPUBLIC INFORMATION TO DEFENDANTS THAT HE EXPRESSLY ATTRIBUTED TO HIS ROOMMATE.**

The Commission alleges that defendants Daryl Payton and Benjamin Durant, III violated federal securities law by trading in the securities of SPSS on the basis of material nonpublic information prior to its acquisition by IBM.  At trial, the Commission will prove that in June and July 2009, Thomas Conradt received specific material nonpublic information about IBM's acquisition of SPSS from his roommate, Trent Martin, and continuously tipped that information to friends and colleagues including Weishaus and the defendants.

At that time, defendants and Conradt were coworkers at the same brokerage firm in New York City, while Weishaus worked remotely for the same brokerage firm.  Conradt Dep. Tr. at 185:6-186:16, Ex. 3.  Weishaus and Conradt were close friends and Weishaus helped Conradt get his job at this broker.  *Id*. at 165:2-14, 169:22-174:9.  Each time Martin shared SPSS information with Conradt, he passed it along to Weishaus, Payton, and Durant, telling them that his roommate was providing this information.  *Id.* at 121:8-123:9; 143:6-145:20; 146:3-149:14; 151:12-152:6; 155:23-156:9; 159:16-160:11; 165:15-24; 166:14-167:4, 168:9-171:17.  By the third week of July 2009, Conradt informed this group that his roommate told him the SPSS deal was going to happen soon.  *Id*. at 154:11-166:7.  Indeed, Durant repeatedly asked Conradt if he "had heard anything else from [his] roommate about it."  *Id*. at 151:18-152:6.  Throughout this period, Conradt and Weishaus exchanged numerous instant messages that tracked their trading in SPSS securities, the persons involved, and their growing excitement.  *See, e.g., id*. at 133:2-143:5; 160:23-165:14.

2

## II.      DEFENDANTS CONTRADICT CONRADT'S TESTIMONY.

The Commission anticipates that defendants will dispute Conradt's testimony at trial by (among other things) denying they received repeated updates from Conradt with more specific information about the SPSS acquisition.  During his deposition Payton testified that, aside from an early July instant message inquiry from Conradt as to whether he had traded in SPSS stock, he recalls only one communication from Conradt regarding SPSS.  Specifically, Payton testified that he first heard of SPSS in late June 2009 when Lehrer and Conradt jointly approached his cubicle and told him that they heard SPSS was going to be acquired.  Payton Dep. Tr. at 152:19-154:8, Ex. 1.  Payton testified that he later purchased specific SPSS options upon Durant's recommendation.  *Id*. at 168:3-170:5.

Durant testified that while he initially learned about SPSS from Conradt in late June 2009, he actually knew very little concrete information about the tip, hearing only that IBM was "kicking [SPSS'] tires."  Durant Dep. Tr. at 183:18-188:2, Ex. 10.  Instead, Durant claims that he traded in SPSS because he and Lehrer had numerous conversations about their positive investment analysis of SPSS.  *Id*. at 200:11- 202:7, 211:13-211:19; 213:3-213:6; 233:11-234:21; 236:21-237:9, 238:25- 241:7.  He denies asking Conradt for additional information.  *Id*. at 254: 19-24.

## III.     AFTER THE SPSS ANNOUNCEMENT DEFENDANTS MET WITH WEISHAUS AND OTHERS TO PLAN A RESPONSE TO INQUIRIES REGARDING THEIR TRADING.

After IBM announced that it was buying SPSS on July 28, 2009, Weishaus organized a meeting at a New York City hotel inviting all the people who Conradt tipped, including defendants, Conradt, and others.  Weishaus was aware of concern about the propriety of their trading and wanted to organize a meeting to discuss their trading and how to respond to

3

investigative inquiries.  On the night of July 28, 2009, Weishaus drove up from Baltimore to meet Durant, Payton, Conradt, and others at a New York hotel to discuss their SPSS trading. Conrad Dep. Tr. at 177:14-183:8, Ex. 3.  While at the hotel, and later at a bar, the men discussed Lehrer's consultation with an attorney, their respective profits, and what to do if there was a "knock on the door" by anyone asking questions about their trading.  *Id.*  Like defendants, Weishaus profited from his unlawful SPSS trading, making over $127,000 in illicit proceeds. *See SEC v. Conradt*, Civ. Act. No. 12-CV-08676-JSR (S.D.N.Y.  Jan. 27, 2014), Dkt. No. 56.

## IV.    WEISHAUS WAS INDICTED, PLED GUILTY, AND COOPERATED WITH AUTHORITIES.

On November 28, 2012, a grand jury sitting in the Southern District of New York returned an indictment charging Weishaus with conspiracy to commit securities fraud and six counts of securities fraud based on his trading in SPSS.  *United States v. Conradt*, 12-CR-887 (S.D.N.Y.) Dkt. No. 3.  Approximately one year later, Weishaus began cooperating with law enforcement.  Starting on November 5, 2013 and continuing through November 2014, Weishaus met with law enforcement and disclosed substantial information, including:

(1)    Weishaus first traded SPSS stock in June 2009.  Conradt called Weishaus late one week in June 2009 and told Weishaus that he had a hot stock tip.  Conradt said that SPSS was a takeover target by IBM.  (Ex. 12)

(2)    Weishaus asked Conradt where he got the information and Conradt said that it came from "Trent" who Weishaus knew was Conradt's roommate.  (Ex. 12)

(3)    Weishaus decided to buy SPSS stock because the information provided by Conradt was very specific.  (Ex. 12)

(4)    In the first conversation Weishaus had with Conradt about SPSS, Conradt provided very specific information, including the names SPSS, IBM, and the proposed purchase price.  The level of specificity Conradt provided to Weishaus was a big factor in why Weishaus invested in SPSS initially.  Weishaus continued to invest in SPSS because of Conradt's constant updates and the fact that the information was coming from the same source.  (Ex. 13)

4

(5)   Weishaus purchased SPSS options right after he purchased SPSS stock. Weishaus believe he spoke to Conradt again before he purchased SPSS options. (Ex. 12)

(6)   In or about June 2009, Conradt told Weishaus that when Martin told Conradt about the acquisition, Martin said something to the effect of, "thanks for helping me out, make yourself a little money." Conradt told Weishaus he understood Martin to be referring to Conradt's help with his arrest. (Ex. 12)

(7)   Weishaus purchased another 100 SPSS options on July 22, 2009 after having another conversation with Conradt where he reassured Weishaus that the acquisition was still happening and the deal was still good. (Ex. 12)

(8)   Conradt told Weishaus the time table for the SPSS acquisition the weekend before it happened. (Ex. 12)

(9)   The Saturday morning before the IBM/SPSS acquisition announcement, Conradt called Weishaus and said that he was out the night before with "Trent" who said the acquisition was happening on Wednesday and IBM was now paying $50 a share. (Ex. 12)

(10)   Conradt told him he was annoyed because Durant was "bugging" him about SPSS at work. (Ex. 12)

(11)   Weishaus, Conradt, Lehrer, Payton, and Durant met at a hotel (and later a bar) in New York City the night of the SPSS announcement. Each person disclosed how much money they made on SPSS trading. There was "banter" about getting their story straight if anyone started asking questions, and Durant said that everyone should just say they like "tech." (Ex. 12)

(12)   Weishaus lied on a brokerage firm Questionnaire about how he learned about SPSS. Weishaus intentionally did not mention Conradt. (Ex. 13)

(13)   Weishaus told Conradt he did not want to know who the source of the SPSS information was because if he knew who the source was then it was clear he would be doing something wrong. (Ex. 13)

On December 19, 2013, Weishaus signed a cooperation plea agreement with the United States Attorney's Office for the Southern District of New York. Ex. 14. That same day, he pled guilty to conspiracy to commit securities fraud and one count of securities fraud, admitting under oath:

In the summer of 2009 I was working as a stockbroker, splitting my time between my firm's Florida office and a home office that I had in my Baltimore apartment.  In or about June and July 2009 I had multiple telephone calls as well as text and instant message communications with a friend of mine from school who was working in Manhattan for the same brokerage firm. In those communications he told me about a tip he had received from his roommate regarding an upcoming corporate transaction. The information he gave me was very specific.  He told me he had been told that IBM would be acquiring a software company called SPSS and he also told me the price per share for the deal.

I knew that information like that was highly material and that it should have been kept confidential prior to any public announcement.  Although I did not know exactly how my friend's roommate learned of the inside information I did not ask my friend to inquire about that because I did not want to know.  On July 22 I used this information to buy SPSS call options with a short expiration date on a national security exchange.  I believed on that date that the inside information must have been revealed in violation of a duty of confidentiality.  My belief was based on repeated updates my friend had described, the specificity of the information I was hearing and my friend's assurances that the information was real and the deal was going to close. The transaction was announced a few days after my purchases and I sold my options at a profit.  I know that my conduct was wrong and I apologize to the Court and my family, specifically my mother and father. Thank you.

Ex. 15 at 21-22.

On January 22, 2015, the Honorable Andrew L. Carter, United States District Judge for the Southern District of New York, vacated Weishaus's guilty plea in the wake of the Second Circuit's decision in *United States v. Newman*. *United States v. Conradt*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 1626, *2-3 (S.D.N.Y. Jan. 22, 2015).  Subsequently, on January 30, 2015, Judge Carter issued an order of *nolle prosequi* dismissing the charges against Weishaus without prejudice.  *United States v. Conradt*, No. 12-cr-887, Dkt. No. 170.

## V.    WEISHAUS HAS REPEATEDLY INVOKED THE FIFTH AMENDMENT AND REFUSED TO TESTIFY.

Weishaus refused to substantively testify when contacted by the Commission.  He invoked the privilege to questions asked both in 2013 and in July 2015.  Weishaus has further

suggested that he will again invoke the privilege at trial.[2]  Of particular importance, Weishaus

will invoke his Fifth Amendment privilege to questions on the following topics:

    (1)    What he knew about SPSS acquisition prior to his trading in SPSS securities in June and July 2009;

    (2)    How, when, what, and from whom he learned about the SPSS acquisition prior to its July 28, 2009 announcement;

    (3)    His intention and understanding of instant messages exchanged with Conradt, including some referencing defendants and others trading in SPSS securities;

    (4)    The timing and substance of any communications with Durant regarding SPSS;

    (5)    The timing and substance of any communications with Payton regarding SPSS; and

    (6)    The substance of the meeting with defendants, Conradt, and others the night of July 28, 2009 when the men discussed their SPSS trading and plans to minimize scrutiny.

---

[2]    If the Court determines that it is unnecessary to physically call Weishaus to assert the Fifth Amendment at trial, the Commission requests that the Court instruct the jury that the Commission intended to call Weishaus as a witness and would have asked him questions regarding the topics specified in this memorandum, but Weishaus has invoked the Fifth Amendment on the grounds that he cannot be compelled to "be a witness against himself."

## ARGUMENT

I.   **THE COURT SHOULD ADMIT WEISHAUS'S FIFTH AMENDMENT TESTIMONY.**

In view of Weishaus's omnipresence in the facts underlying this action, his refusal to testify deprives the factfinder of significant, firsthand information that would assist in the search for the truth.  Rule 401 of the Federal Rules of Evidence states that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  *See United States v. Scarpa*, 913 F.2d 993, 1016 (2d Cir. 1990) (citation omitted); *see also Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471, 1482 (8th Cir. 1987) ( "In order for evidence to be admissible under Rule 401, it need not necessarily prove that a fact of consequence exists; it need only make it more probable that that fact exists."  Courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.

The probative value of Weishaus's Fifth Amendment testimony is substantial.  As described above, he is inextricably involved in the events underlying this matter and corroborates Conradt's testimony in numerous ways.  *See Scarpa*, 913 F.2d at 1016 ("Confirmatory evidence is relevant since it aids the jury in evaluating the probative force of other evidence offered to prove a material fact.")  At trial, the jury will hear repeated references to Weishaus from Conradt and defendants.  As an integral member of the conspiracy, it is clear that he has knowledge supporting the Commission's case and his testimony is important in its corroboration of Conradt's recollections and undercutting defendants' tales of ignorance.  But the jury will not hear that testimony and may hold that omission against the Commission (who has the burden of proof).  Accordingly, admitting the Fifth Amendment testimony will appropriately lend credence

8

to Conradt's testimony.  Conversely, if the Commission is not permitted to introduce Weishaus's

Fifth Amendment testimony, the jury will be left with the false impression that the Commission

did not call Weishaus to testify because his testimony would have been harmful to its case, when

precisely the opposite is true.

Under Federal Rule of Evidence 403, relevant evidence should only be excluded if its

probative value is "substantially outweighed" by unfair prejudice or other factors.  Defendants

would not be unduly prejudiced by the admission of these Fifth Amendment assertions,

especially given that they are the ones putting Conradt's credibility at issue.  *See Brink's Inc. v.*

*City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (holding that admission of Fifth Amendment

testimony was appropriate under Rule 403, because while it was "damning" to the opposing

party, it was not "inflammatory").

## II.     ADMISSION OF WEISHAUS'S TESTIMONY AND AN ADVERSE INFERENCE INSTRUCTION IS WARRANTED UNDER THE *LIBUTTI* ANALYSIS

The Supreme Court has stated that negative inferences derived from invocation of the

Fifth Amendment may be permissible against a defendant in civil cases.  *See Baxter v.*

*Palmigiano*, 425 U.S. 308, 318-19 (1976).  This is true even when the invocation is made by a

nonparty.  *See LiButti v. United States*, 107 F.3d 110, 120-24 (2d Cir. 1997).  *See also Coquina*

*Investments v. TD Bank*, N.A., 760 F.3d 1300 (11th Cir. 2014); *FDIC v. Fidelity & Deposit Co.*

*of Md.*, 45 F.3d 969, 977-78 (5th Cir. 1995); *Cerro*, 819 F.2d at 1481-82; *Rad Services, Inc. v.*

*Aetna Cas. and Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986); *SEC v. Durante*, Civ. Act. No. 2013

U.S. Dist. LEXIS 178351, *38 (S.D.N.Y. Dec. 19, 2013).  "The admissibility of a nonparty's

invocation of the Fifth Amendment privilege against self-incrimination and the concomitant

drawing of adverse inferences should be considered 'on a case-by-case basis.'"  *Coquina,* 760

F.3d at 1310 (citing *Cerro*, 819 F.2d at 1481).  The justification for admitting such evidence is

that a witness's use of Fifth Amendment privilege deprives a party of potentially crucial evidence, leaving the party no recourse other than to comment upon that use. *See United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.,* 55 F.3d 78, 82 (2d Cir. 1995).

In *Libutti*, the Second Circuit suggested that the following four non-exclusive factors should guide the trial court in determining the admissibility of a non-party's invocation of the Fifth Amendment privilege and the concomitant drawing of adverse inferences: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *Id.* at 123-24. Application of the *LiButti* factors to the instant facts demonstrates that the testimony is admissible and an adverse inference instruction based on Weishaus's Fifth Amendment testimony is justified. *LiButti*, 107 F.3d at 124.

### A. Defendants and Weishaus Shared a Close Relationship as Friends, Colleagues, and Co-conspirators.

The Second Circuit identified the relationship between the non-party witness and the party as the "most significant circumstance" in admitting a non-party's invocation of the Fifth Amendment and permitting an adverse inference. *LiButti*, 107 F.3d at 123. "The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship." *Id.* Moreover, in describing the second consideration – control – the Court stated "[t]he degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation will likely inform the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under Fed. R. Evid. 801(d)(2)- a vicarious

admission." *LiButti*, 107 F.3d at 123.  Notably, 801(d)(2) includes statements by the party's co-conspirator during and in furtherance of the conspiracy.

Payton met Weishaus in 2007 when he, Lehrer, Weishaus, and a common friend, traveled to Asia together for three weeks.  Payton, Weishaus, and Lehrer emerged from the trip as friends and remained friends through the summer of 2009.  Payton Dep. Tr. at 109:2-110:12, 113:13-14:21, Ex. 1.  Payton worked with Weishaus at the brokerage firm in Connecticut, and briefly worked with him in New York before Weishaus started working remotely from Baltimore.  *Id*. at 77:1-77:7.  Durant met Weishaus when Durant started working at the brokerage firm in 2009, although by this time Weishaus had already begun working remotely and was not in the office.  Durant Dep. Tr. at 169:16-170:7, Ex. 10.

The evidence further will show that these men were co-conspirators in the illegal acts underlying this action.  When defendants, Weishaus, and others met the night of the SPSS announcement to coordinate their response to any SPSS scrutiny, they "conspired to commit an offense against the United States," namely securities fraud, in violation of 18 U.S.C. § 371.  *See* Ex.11 at 2, 7-8, 29-30; Ex. 7 at 4-8, 28-29; Ex. 15 at 6-12.  "As alleged coconspirators, some degree of loyalty and/or control may prevent one party from rendering damaging testimony against another."  *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 U.S. Dist. LEXIS 6837, *24 (N.D. Ill. May 11, 2000).  *See also United States v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America.*, 832 F. Supp. 644, 652 (S.D.N.Y. 1993).  Such a relationship favors imputing the alleged conspirator's Fifth Amendment assertion to his co-conspirator.  *Id*.

Weishaus's close friendship with Payton, combined with his joint involvement in the illegal trading, makes it highly unlikely that he will "render testimony [Fifth Amendment or

otherwise] in order to damage" that friendship or further incriminate himself or his coconspirators. *LiButti*, 107 F.3d at 123; *State Farm*, 2000 U.S. Dist. LEXIS 6837, *24. Accordingly, both the relationship and the control considerations of *LiButti* weigh in favor of admitting the testimony and permitting the adverse inference against defendants.

**B.      Weishaus's Interests Are Perfectly Aligned with Defendants.**

The third *LiButti* consideration is whether Weishaus "is pragmatically a non-captioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *LiButti*, 107 F.3d at 123. Aligned interests can be a mutual interest in establishing as legitimate, transactions alleged fraudulent. *In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 Bankr. LEXIS 1925, *30 (Bankr. S.D.N.Y. Apr. 17, 1998).

Here, defendants and Weishaus both traded in SPSS as part of the same conspiracy. After the vacatur of his criminal plea and dismissal of criminal charges, Weishaus fought for complete vindication, seeking to vacate his settled civil judgment with the Commission and prove the legitimacy of his trading at trial. *See SEC v. Conradt*, Civ. Act. No. 12-CV-08676-JSR, Dkt. No. 75. Thus, notwithstanding the lack of any pending proceeding against him, he continues to have a strong incentive, from a reputational standpoint, in seeing his friends and coconspirators vindicated on conduct very similar to his own.

Weishaus's continued invocation of his Fifth Amendment privilege both advances his interests by permitting him to avoid self-incrimination, and assists defendants by not testifying truthfully – which, as demonstrated by information he provided the FBI, would bolster the Commission's case and damage their defense. Accordingly, this factor weighs in favor of admitting the testimony and permitting the adverse inference against defendants.

C.      **Weishaus Plays a Significant Role in the Litigation.**

The fourth *LiButti* factor asks "whether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects." *LiButti*, 107 F.3d at 123-24.  As described above, the evidence reflects that Weishaus was involved in the conspiracy from the outset through the end and can testify as to the timing and substance of Conradt's disclosures and his own trading, corroborating Conradt's testimony.  His continued invocation of the Fifth Amendment prevents this Court from ascertaining the truth about various events and communications.  Accordingly, this consideration also weighs in favor of the trustworthiness of the adverse inference and its ability to assist in the search for truth.

III.    **BECAUSE WEISHAUS IS "UNAVAILABLE" HIS STATEMENTS AGAINST INTEREST ARE ADMISSIBLE UNDER RULE 804(b)(3).**

Because Weishaus is unavailable to provide substantive testimony, the Commission respectfully requests that this Court admit his statements against interest.  Rule 804(b)(3) of the Federal Rules of Evidence provides for the admission of a statement against a declarant's interest if the declarant is unavailable as a witness at trial.  It is well settled that when a witness invokes their Fifth Amendment rights, the witness is "unavailable" as defined by Rule 804(a)(1).  *See United States v. Matthews*, 20 F.3d 538, 545 (2d Cir. 1994); *United States v. Bakhtiar*, 994 F.2d 970, 977 (2d Cir. 1993).  A witness need not be physically brought into court to assert the privilege; the government's representation that the pleading witness's lawyers had been contacted and that each attorney stated that his client would assert the Fifth Amendment privilege is sufficient.  *See, e.g., United States v. Williams*, 927 F.2d 95, 98–99 (2d Cir. 1991). Because Weishaus has asserted the Fifth Amendment and refused to testify, he is unavailable for purposes of Rule 804(a)(1).

Rules 801 and 802 of the Federal Rules of Evidence bar the admission of hearsay, statements other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted.  Statements against the declarant's interest, however, are carved out from the general hearsay prohibition when the declarant is unavailable. *See* Fed. R. Evid. 804(b)(3).  Rule 804(b)(3) provides in pertinent part:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . .  that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Pursuant to Rule 804(b)(3), the Commission seeks to admit Weishaus's statements, set forth above, from his guilty plea colloquy and his interviews with the FBI.

### A.  Weishaus's Guilty Plea Colloquy is Admissible.

The Second Circuit has indicated that guilty plea allocutions qualify as statements against interest.  *See Williams*, 927 F.2d at 98; *United States v. Scopo*, 861 F.2d 339, 348 (2d Cir.1988); *United States v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981).  In *Scopo*, the Second Circuit held:

> In general a plea of guilty is a statement against the penal interest of the pleader for the obvious reason that it exposes him to criminal liability. Likewise, so much of the allocution as states that the defendant committed or participated in the commission of a crime, thereby permitting the court to accept the plea, is normally against his interest.

861 F.2d at 348 (citations omitted).  Turning to the present case, Weishaus's plea allocution is against his penal interest because the allocution exposed him to a felony conviction and a prison sentence.  Moreover, the facts to which Weishaus allocuted at his guilty plea are supported by "corroborating circumstances that clearly indicate [their] trustworthiness . . . ."  Fed. R. Civ. P.

804(3)(B).  These facts are corroborated by both Conradt's and Payton's guilty plea colloquy.  *See* Ex. 11 at 28-30; Ex. 9 at 28-29, as well as evidence of record in this case.[3]

### B.  Weishaus's Statements to Law Enforcement are Admissible.

When Weishaus met with the law enforcement on numerous occasions he admitted facts (described above) that subjected him to liability for securities fraud and conspiracy to commit securities fraud.  Accordingly, these statements are also admissible as statements against interest under Rule 804(b)(3).  *See United States v. Koskerides*, 877 F.2d 1129, 1135-36 (2d Cir. 1989) (holding FBI agent's testimony of statements made to him by defendant's father were admissible under 804(b)(3)); *United States v. Stratton*, 779 F.2d 820, 828-29 (2d Cir. 1985) (holding FBI recordings where co-defendant described history of conspiracy were admissible under 804(b)(3)); *United States v. Garris*, 616 F.2d 626, 630-31 (2d Cir. 1980) (holding FBI agent's testimony of statements made to him by witness were admissible under 804(b)(3)).

Again, the statements Weishaus made during interviews with the FBI are plainly supported by "corroborating circumstances that clearly indicate [their] trustworthiness . . . ." Fed. R. Civ. P. 804(3)(B).  To a large extent, they coincide with Conradt's testimony, the various allocutions in the related criminal proceeding, and are further corroborated by documentary evidence such as trading records, instant messages, and records from his brokerage firm employer.

### C.  The Probative Value of these Statements Greatly Exceeds any Unfair Prejudice.

The content of the statements the Commission seeks to admit have great probative value. First, these statements corroborate Conradt's testimony and help establish what defendants knew

---

[3]    Federal Rule of Evidence 410 is inapplicable to Weishaus's plea since that rule only applies to whether something is admissible "against the defendant who made the plea." Fed. R. of Evid. 410.  Here, the Commission does not seek to admit Weishaus's plea for use against *Weishaus* (who made the plea), but instead against Payton and Durant.

about IBM's planned acquisition of SPSS and where that information came from.  Second, they independently introduce facts showing defendants' knowledge of the tip and their actions after IBM announced it was acquiring SPSS.  Conversely, defendants will suffer no undue or unfair prejudice from the truth.  The Commission proposes to sanitize Weishaus's statements against interest so the jury will not learn that those statements were made in the context of a criminal proceeding.

## CONCLUSION

For these reasons, the Commission respectfully requests that the Court admit Weishaus's Fifth Amendment assertion, instruct the jury on the adverse inference, and admit Weishaus's sanitized guilty plea colloquy and sanitized statements made during interviews with the FBI.

Dated: September 14, 2015                    Respectfully Submitted,


SECURITIES AND EXCHANGE COMMISSION


s/_____
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
Counsel for Plaintiff
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

16