UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | Civil Action No. 14-cv-04644-JSR |
| Plaintiff, | ECF CASE |
| v. | |
| **DARYL M. PAYTON, and BENJAMIN DURANT, III,** | |
| Defendants. | |

**SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE***

SECURITIES AND EXCHANGE COMMISSION
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... i

ARGUMENT ........................................................................................ 1

   I.    THE GUILTY PLEAS OF PAYTON AND WEISHAUS ARE ADMISSIBLE ................................................................................. 1

       A. Rule 410 Does Not Apply to Statements in Payton's or Weishaus's Plea Colloquy ................................................................. 1

       B. The Statements in Weishaus's Plea Colloquy are not Hearsay and are Clearly Relevant ............................................................. 2

   II.   AN ADVERSE INFERENCE INSTRUCTION IS WARRANTED BASED ON THE INVOCATION OF THE FIFTH AMENDMENT BY WEISHAUS AND LEHRER ........... 3

   III.  DEFENDANTS HAD NOTICE OF THE COMMISSION'S WITNESSES ............................................................................. 5

   IV.  THE COMMISSION DOES NOT SEEK TO ADMIT TESTIMONY AND DOCUMENTS RELATING TO PAYTON'S INVESTMENT FUND AND OTHER TANGENTIAL ISSUES ............................................................. 8

   V.   PAYTON'S DECEPTIVE USE OF THE CERTIFIED FUND SPECIALIST DESIGNATION SHOULD BE ADMITTED ........ 9

   VI.  DURANT'S PERSONAL TAX RETURNS ARE ADMISSIBLE UNDER RULE 403 ............................................ 10

   VII. THE COMMISSION DOES NOT SEEK TO ADMIT EVIDENCE OF DEFENDANTS' OR THIRD-PARTY WITNESSES' ARRESTS FOR INSIDER TRADING ................ 11

TABLE OF AUTHORITIES

CASES                                                                                                                        PAGE(S)

*Ebewo v. Martinez*, 309 F.Supp.2d 600 (S.D.N.Y. 2004) ..................................................6

*John Paul Mitchell Systems v. Quality King Distrib., Inc.*,
106 F. Supp. 2d 462 (S.D.N.Y. 2000)......................................................................................4

*LiButti v. United States*, 107 F.3d 110  (2d Cir. 1997) ....................................................3

*Nance v. Ricoh Electronics, Inc.*, 381 App'x 919 (11th Cir 2010)......................................6

*SEC v. Conradt*, Civ. No. 12-cv-8676 (JSR) (S.D.N.Y. Jan. 27, 2014) ..............................4

*SEC v. Payton*, No. 14-4644 (JSR) (S.D.N.Y. Dec. 28, 2015) ..........................................11

*United States v. Conradt*, No. 12-cr-887 (S.D.N.Y.).............................................................1

*United States v. Scopo*, 861 F.2d 339 (2d Cir.1988)..............................................................2

*United States v. Weishaus*, Crim. No. 12-cr-887 (ALC) ......................................................2

*United States v. Williams*, 927 F.2d 95 (2d Cir. 1991) ........................................................2

*United States v. Winley*, 638 F.2d 560  (2d Cir. 1981)  ........................................................2

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*
498 F.Supp.2d 25 (D.C. 2007)..................................................................................................4

*In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250
(D. Kan. Jan. 8, 2013)...............................................................................................................4

*Wei Yan Yan v. 520 Asian Restaurant Corp.*, 2014 WL 1877078
(S.D.N.Y. May 7, 2014).............................................................................................................8

Other Authorities

Fed. R. Evid. 410 ...................................................................................................................2

Fed. R. Evid. 804(a)...............................................................................................................2

Fed. R. Evid. 804(b)(3) .........................................................................................................2

Fed. R. Civ. P. 37(c)(1) ......................................................................................................5,6

Fed. R. Civ. P. 37(a)(3)(A) ...................................................................................................7

## TABLE OF AUTHORITIES
## (Cont'd)

Fed. R. Evid. 404(b) ...........................................................................................................9

Fed. R. Evid. 608 ...............................................................................................................9

Fed.R. Evid. 404(b)(2) ......................................................................................................9

Fed. R. Evid. 403 .............................................................................................................11

Plaintiff Securities and Exchange Commission (the "Commission"), respectfully submits this Opposition to Defendants' Omnibus Motions *in Limine*.

## ARGUMENT

**I.     THE GUILTY PLEAS OF PAYTON AND WEISHAUS ARE ADMISSIBLE.**

Defendants misunderstand the Commission's intentions regarding these guilty pleas and thus portions of the first argument in their omnibus motion are moot. The Commission does not seek to admit the fact that Payton, Conradt, Weishaus, or Martin were charged criminally, signed a plea agreement, or pled guilty. The Commission only intends to admit: 1) factual statements made Payton during his plea colloquy; and 2) factual statements made by Weishaus (who is now asserting the Fifth Amendment) during his plea colloquy. The arguments in support of these positions are fully addressed in the Commission's Memorandum in Support of its Motion *in Limine* to Question Defendant Payton Regarding Statements in His Guilty Plea Colloquy and to Estop Payton From Offering Contradictory Testimony or Argument and the Commission's Memorandum of Law in Support of Its Motion in Limine to Admit David Weishaus's Fifth Amendment Assertion and His Statements Against Interest, And Request for An Adverse Inference Instruction, respectively. However, we will briefly summarize those arguments below as well.

**A.     Rule 410 Does Not Apply to Statements in Payton's or Weishaus's Plea Colloquy.**

Federal Rule of Evidence 410 prohibits the admission of certain information related to withdrawn guilty pleas. Neither Payton nor Weishaus withdrew their guilty pleas. In reality, Payton moved the court to vacate his guilty plea. *See United States v. Conradt*, No. 12-cr-887, Dkt. Nos. 154 & 156 (S.D.N.Y.). Weishaus joined in Durant's motion to dismiss the indictment

which had previously been filed, but did not request that his plea be vacated. The court subsequently vacated the guilty pleas. *See Conradt*, Dkt. No. 157 & 158.

Moreover, even if Weishaus had withdrawn his guilty plea, Federal Rule of Evidence 410 would not prevent admission of his plea colloquy since he is not a defendant in the present action. Rule 410 only applies to the admissibility of the plea of the defendant. Fed. R. Evid. 410. Because Weishaus is not a defendant in this trial, this rule has no bearing on the admissibility of his guilty plea or related statements.

> **B.    The Statements in Weishaus's Plea Colloquy are not Hearsay and are Clearly Relevant.**

Defendants contend that the statements in Weishaus's guilty plea colloquy are hearsay. But despite being served with a valid subpoena, Weishaus is refusing to testify on the basis of the Fifth Amendment privilege and is thus considered unavailable. Fed. R. Evid. 804(a). Because Weishaus is "unavailable," statements he previously made that are against his interest are admissible as an exception to the general hearsay prohibition. Fed. R. Evid. 804(b)(3). The Second Circuit has repeatedly held that guilty plea allocutions qualify as statements against interest. *See United States v. Williams*, 927 F.2d 95, 98 (2d Cir. 1991); *United States v. Scopo*, 861 F.2d 339, 348 (2d Cir.1988); *United States v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981).

Defendants also object on relevance grounds without any supporting argument. But the relevance of the statements in Weishaus's guilty plea colloquy is obvious, as these statements go to central issues in this trial. For example, in his guilty plea colloquy Weishaus addressed the specificity of the information he obtained from Conradt. *United States v. Weishaus*, Crim. No. 12-cr-887 (ALC), Dec. 19, 2013 Tr. at 21-22, Ex. 15.[1] Weishaus's admission that Conradt

---

[1] Exhibit Nos. 1-19 referenced herein are exhibits to the Declaration of A. Kristina Littman in Support of Securities and Exchange Commission's Motions *in Limine*. Exhibit Nos. 20-29

2

passed him the identity of the target company and acquiring company and the proposed price per share, corroborates Conradt's testimony and completely undermines defendants' anticipated testimony that they knew or learned nothing from Conradt.

## II. AN ADVERSE INFERENCE INSTRUCTION IS WARRANTED BASED ON THE INVOCATION OF THE FIFTH AMENDMENT BY WEISHAUS AND LEHRER.

The jury should be instructed that an adverse inference is appropriate based on the invocation of the Fifth Amendment by Weishaus and Lehrer. In *LiButti v. United States*, 107 F.3d 110, 120-24 (2d Cir. 1997) the Second Circuit held that an adverse inference may be derived from invocation of the Fifth Amendment by a nonparty. Consideration of the factors outlined in *LiButti*, weighs in favor of an adverse inference jury instruction. *See Id.* at 123-24.[2] When considering the first and second factors, the nature of the relevant relationship and degree of control of the party over the non-party witness, it is clear that Lehrer and Weishaus were friends, colleagues and co-conspirators with defendants. The third factor, the compatibility of the interests of the party and non-party witness in the outcome of the litigation, also weighs in favor of an adverse inference since Lehrer and Weishaus were members of the same insider trading ring as the defendants. Finally, the fourth factor is satisfied since Lehrer and Weishaus play significant roles in the litigation. As co-conspirators and members of the same insider trading ring, they possess considerable knowledge about defendants' conduct. Based on his deposition testimony, the Commission expects that Durant will testify at trial that he purchased

---

referenced herein are exhibits to the Declaration of Scott A. Thompson in Support of Securities and Exchange Commission's Opposition to Defendants' Omnibus Motions *in Limine*.

[2] More fulsome discussions of the *LiButti* factors and their application to Lehrer and Weishaus can be found in Commission's Memorandum in Support of its Motion *in Limine* to Admit Matthew Lehrer's Fifth Amendment Assertion and Request for Adverse Inference Instruction and its Memorandum in Support of its Motion *in Limine* to Admit David Weishaus's Fifth Amendment Assertion and His Statements Against Interest, and Request for an Adverse Inference Instruction.

3

SPSS securities because he had extensive conversations with Lehrer about the merits of SPSS as investment, rather than because he was tipped by Conradt.

Further, adverse inferences are appropriate where participants in the fraudulent scheme invoke their Fifth Amendment privilege. *John Paul Mitchell Systems v. Quality King Distrib., Inc.*, 106 F. Supp. 2d 462, 471 (S.D.N.Y. 2000). In *John Paul Mitchell Systems*, the court found that "a fact finder could reasonably draw the inference that [the two individuals] invoked their Fifth Amendment privilege because they did in fact defraud [the plaintiff]." *Id.* Multiple witnesses in this case, including the defendants themselves, have testified concerning Weishaus's and Lehrer's involvement in this insider trading scheme. Conradt Dep. Tr. 149:2-150:9, 165:15-24, 169:22-170:6, 174:15- 183:8, Ex. 3.; Payton Dep. Tr. at 152:19-154:8, Ex. 1; Durant Dep. Tr. at 200:11-202:7, 211:13-211:19; 213:3-213:6; 233:11-234:21; 236:21-237:9, 238:25-241:7, Ex. 10. Weishaus previously settled charges relating to his participation in this insider trading scheme and is currently appealing this court's denial of his motion to set aside that settlement. Final Judgment and Consent, *SEC v. Conradt*, Civ. No. 12-cv-8676 (JSR) (S.D.N.Y. Jan. 27, 2014), Ex. 22; Notice of Appeal, *SEC v. Conradt*, Civ. No. 12-cv-8676 (JSR) (S.D.N.Y. Sept. 14, 2015), Ex. 23. While Lehrer has not been charged, his involvement in the insider trading scheme and interest in the outcome are significant. Weishaus's and Lehrer's interests are directly aligned with the present defendants.

Defendant's reliance on cases concerning former employees is misplaced. *See Defs.' Mem.* at 4 (citing *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250 (D. Kan. Jan. 8, 2013); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F.Supp.2d 25, 61 n. 25 (D.C. 2007)). Lehrer and Weishaus were co-conspirators with the defendants in the present action, not defendants' employees. The relationship component of the *LiButti* analysis

4

does not require any such employee/employer relationship. In the present case, this factor is satisfied because of Lehrer's and Weishaus's co-conspirator relationship with defendants.

### III. DEFENDANTS HAD NOTICE OF THE COMMISSION'S WITNESSES.

Defendants claim the Commission should be precluded form introducing testimony of FBI Special Agent Eric R. Burns, Robert Decker and Todd Robertson because they were not properly identified in the Commission's Rule 26(a) disclosures. This argument is baseless.

In its Rule 26(a) disclosure the Commission identified "Agent(s) of the Federal Bureau of Investigation" who had discoverable information regarding "identification, authentication, and statements made in the course of the related criminal investigation." Comm. Supp. Initial Disclosures, Ex. 25. As the Commission staff has informed defendants, the Commission intends to call Special Agent Burns to testify on precisely that topic – "statements made to him in the course of the related criminal investigation" by defendant Payton. *Id*.

The contention that defendants did not know the identity of the "agent" is ludicrous. Agent Burns was the only agent that defendant Payton spoke with during the criminal investigation. *See Defs.' Mem.* at 6. In addition, defendants also knew Agent Burns was the agent in question because defendants obtained FBI 302s drafted by Burns in connection with the parallel criminal case. *See* Ex. 20, April 22, 2015 letter from Assistant United States Attorney Louis Pellegrino; Martin Dep. Tr. at 49:5-17, Ex. 21. Payton knew of Agent Burns, knew the Commission was considering calling FBI agents to testify about statements made by the defendants, and had every opportunity to seek discovery relating to Agent Burns if he felt it was needed. Defendants' allegations of sandbagging are unsupportable.

Even assuming that the Commission did not properly identify Agent Burns, which it did, his testimony is still admissible pursuant to Federal Rule of Civil Procedure 37(c)(1). That rule

5

provides, that even if a party fails to comply with Rule 26(a) the evidence is still permitted at trial if the "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004). It is clear that there was no harm here to defendant Payton.

Unlike *Nance v. Ricoh Electronics, Inc.*, 381 App'x 919, 923 (11th Cir 2010), which defendants rely upon, Payton and Durant had the opportunity to depose Agent Burns during discovery and in the subsequent months since the initial trial was adjourned. Because Agent Burn's name was disclosed on August 31, 2015 as part of the Commission's Rule 26(a)(3) disclosures (*see* Dkt. No. 64), and because the trial was then postponed, any prejudice could have been cured by seeking additional information or a deposition of Agent Burns in the last five months – yet defendants have made no such request. Agent Burns should be permitted to testify.

Defendants make similarly unfounded claims that the SEC failed to disclose witnesses from Euro Pacific, defendants' former employer.[3] But once again, defendants mischaracterize and misread the Rule 26(a) disclosures made by the Commission. The Commission disclosed in its initial Rule 26(a) disclosures that, in addition to the defendants, other individuals who were likely to have discoverable information included "present and former employees" of Euro Pacific. Comm. Initial Disclosures, Ex. 24. The Commission disclosed that such person would have knowledge on the following topics: "including but not limited to information regarding interactions with, and the employment and termination of Defendants, Conradt, Weishaus, and others; and authentication of any documents and/or tangible things produced." *Id.* This provided

---

[3] Defendants move to preclude the testimony of both Robert Decker and Todd Robertson. The Commission has determined that it will not be calling Todd Robertson, and the issue as to Mr. Robertson is moot.

6

defendants with the information needed to know who could be potential witnesses – particularly given their first-hand knowledge of Euro Pacific as former employees themselves.

Defendants claim that this did not provide adequate notice that Mr. Decker could be called to testify about the circumstances of the defendants' termination – when that was a topic specifically disclosed – is hard to understand. There was no attempt to hide this area of inquiry from defendants. Moreover, to the extent defendants claim that they did not know Robert Decker's name, this is belied by their concession in their motion that the Commission elicited testimony regarding Decker during the first depositions in this case. Indeed, defendants Durant and Payton both identified Robert Decker during their testimony in this matter. They clearly knew his identity and his role in this case.

Finally, as with Agent Burns, there simply is no prejudice to defendants that could not have been cured but for defendants' inaction. If defendants believed the Commission's prior disclosures were too vague to be helpful, they also could have asked the Commission to clarify – something they never did. Indeed, if that did not suffice, Rule 37 also allows for a procedure to move to compel disclosure if defendants considered the disclosure inadequate back in May of 2015. *See* Fed. R. Civ. P. 37(a)(3)(A). And they certainly could have sought Mr. Decker's deposition once the trial was postponed. Defendants served their motion *in limine* objecting to these witnesses on September 4, 2015, claiming that they could not possibly take the depositions in the two weeks before the scheduled trial date. On September 11, 2015, the court adjourned the trial and it is now set to begin February 16, 2016. In the intervening months, defendants have not sought to depose Mr. Decker. It is not appropriate for defendants to sit idly by and then hope that they can exclude witnesses with relevant knowledge about a topic in which they were

7

directly involved, and which they understood was at issue in this case, by playing 11th hour gotcha.

Defendants' rely on *Wei Yan Yan v. 520 Asian Restaurant Corp.*, 2014 WL 1877078 (S.D.N.Y. May 7, 2014), for the proposition that disclosure of "present or former employee(s)" made it impossible for them to identify Mr. Decker and to depose him. This is clearly distinguishable from the present case since defendants did identify Mr. Decker as having important information during their depositions and have had the opportunity to depose him during discovery and in the subsequent months since the initial trial was adjourned. Moreover, defendants also included in their initial disclosures that each defendant "reserves the right to call additional or different witnesses following further investigation and analysis by counsel." Payton's Initial Disclosures, Ex. 26; Durant's Initial Disclosures, Ex. 27. It is disingenuous for Defendants to include this "catch-all" provision in to take issue with the manner in which the Commission disclosed witnesses that Defendants clearly had notice of.

## IV. THE COMMISSION DOES NOT SEEK TO ADMIT TESTIMONY AND DOCUMENTS RELATING TO PAYTON'S INVESTMENT FUND AND OTHER TANGENTIAL ISSUES.

In their fifth argument, defendants seek to exclude testimony and documents relating to Payton's investment fund he started in 2010/2011, and tax returns of Payton Capital Management, a related corporate entity. The Commission is not seeking to introduce any of these materials, and thus defendants' arguments are moot.

## V.  PAYTON'S DECEPTIVE USE OF THE CERTIFIED FUND SPECIALIST DESIGNATION SHOULD BE ADMITTED.

Defendants' also contend that Payton's knowingly improper use of the Certified Fund Specialist designation is inadmissible under Rule 404(b) and Rule 608 of the Federal Rules of Evidence. These arguments miss the mark.

On November 3, 2008 defendant Payton received a notification from the institute of Business & Finance informing him that he had not completed his Certified Fund Specialist certification and encouraging him to do so. *See* November 3, 2008 Email to Daryl M. Payton, Ex. 28. Payton responded that he was "[n]ot interested in this at this time." *Id.* Despite acknowledging that he was not certified to use this designation, Payton continued to falsely represent to prospective clients that he was a Certified Fund Specialist. *See* January 28, 2009 Email from Daryl Payton, Ex. 29.

Defendants seek to exclude this evidence under Rule 404(b) and 608(b). Under Rule 404(b)(2), evidence concerning Payton's level of sophistication is permitted to show his knowledge and lack of accident in violating the rules and regulations applicable to his profession. This evidence is also admissible under Rule 405(b) because Payton's mental state and character for truthfulness as it relates to such rules and regulations is directly related to the charges and defenses presented in this case. Further, Rule 608(a) permits attacking a witness's credibility through a showing of a character for untruthfulness. The Commission expects Payton to testify that he either lacks memory of the details of what Conradt told him or that Conradt did not tell him specific details of the SPSS tip. The Commission will persuade the jury that Payton's testimony is incredible.

His continued use of the Certified Fund Specialist designation even after he was informed that it was improper, is directly relevant to his credibility. The jury must have the opportunity to assess his truthfulness. Any prejudice caused by Payton's own conscious and intentional misuse of this designation is not unfair. Further, this is not a "side-show" as defendants contend. The Commission simply intends to offer two exhibits showing that Payton knew that his use of the designation was improper and continued to use it.

## VI. DURANT'S PERSONAL TAX RETURNS ARE ADMISSIBLE UNDER RULE 403.

In their seventh argument in the omnibus motion, defendants seek to exclude various evidence relating to Durant. As an initial matter, the Commission does not anticipate offering several of the pieces of evidence that defendants seek to exclude, including: evidence of Durant's termination from Fidelity; the lawsuit filed against Durant by American Express; the tax warrants issued against Durant by New York State; or the federal tax lien against him. Thus, the motion is moot as to these issues. However, the Commission will seek to admit Durant's personal tax returns. The probative value of Durant's personal tax returns is significant, and there is no risk of unfair prejudice.

Indeed, even defendants concede that these tax returns could be relevant. Durant's tax returns for the year of his fraud are clearly relevant. Moreover, the returns from the years surrounding 2009 should also be admissible for the same reason – they provide additional information and context regarding Durant's financial condition and trading history. Defendants' real challenge to these records is that, if offered in conjunction with the liens and warrants, this information could be prejudicial. But because the Commission is not seeking to admit those other records there is no risk of unfair prejudice and thus, the tax returns should be admissible.

In any event, the probative value of these tax returns greatly outweighs and unfair or undue prejudice.  Fed. R. Evid. 403.

## VII. THE COMMISSION DOES NOT SEEK TO ADMIT EVIDENCE OF DEFENDANTS' OR THIRD-PARTY WITNESSES' ARRESTS FOR INSIDER TRADING.

Defendants' final argument seeks to exclude evidence of the defendants' and third-party witnesses arrests for insider trading.  As indicated in the Commission's Motions *In Limine*, the Commission agrees that both parties and all witnesses should be precluded from referring to the defendants' and witnesses' indictment, arrests, and the dismissal of the criminal insider trading case.

Of course, evidence relating to Martin's arrest for destruction of property or assault on June 20, 2009, however, should not be excluded.  As made clear in the Court's opinion on summary judgment, it is directly relevant to the issue of benefit, which defendants contest.  *See SEC v. Payton*, No. 14-4644 (JSR) at *11-12 (S.D.N.Y. Dec. 28, 2015) (order denying summary judgment).

Dated:  January 15, 2016          Respectfully Submitted,


SECURITIES AND EXCHANGE COMMISSION

s/ David L. Axelrod
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
Counsel for Plaintiff
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

11