UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 14-cv-04644-JSR |
| Plaintiff, | ECF CASE |
| v. | |
| DARYL M. PAYTON, and BENJAMIN DURANT, III, | |
| Defendants. | |

SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF
IRRELEVANT, INADMISSIBLE, AND UNDULY PREJUDICIAL EVIDENCE

SECURITIES AND EXCHANGE COMMISSION
David L. Axelrod
Scott A. Thompson
Catherine E. Pappas
A. Kristina Littman
One Penn Center
1617 JFK Blvd, Suite 520
Philadelphia, PA  19103
(215) 597-3100

## TABLE OF CONTENTS

ARGUMENT ..................................................................................................................1

I.  THE "IDEA" THAT THE INSIDER TRADING LAWS HAVE CHANGED IS
    INADMISSIBLE UNDER RULE 403. ..............................................................1

II.  EVIDENCE CONCERNING THE FACT THAT DEFENDANTS AND WITNESSES
     WERE INDICTED, PLED GUILTY, OR HAD THEIR PLEAS VACATED IS
     INADMISSIBLE ...........................................................................................3

III.  MARTIN'S "IMPRESSION" THAT DALLAS WANTED HIM TO TRADE LACKS
      FOUNDATION AND IS INADMISSIBLE UNDER RULE 403......................................5

IV.  CONRADT'S OPINION ABOUT WHY MARTIN TIPPED HIM IS INADMISSIBLE
     UNDER RULES 701 AND 403 ......................................................................10

V.  CONRADT'S MOTIVATION FOR HANDLING APARTMENT TASKS IS
    IRRELEVANT AND INADMISSIBLE ..........................................................13

VI.  DEFENDANTS SHOULD BE PRECLUDED FROM ADMITTING THE JUNE 1 2009
     TEXT MESSAGE BECAUSE NO WITNESS CAN COMPETENTLY TESTIFY
     ABOUT IT AND IT IS INADMISSIBLE HEARSAY....................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81 (2d Cir. 1984) ..........................20

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc.*, No. 08 Civ. 7508(SAS)
    2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ...........................................................4

*Alvarez v. Nicholson*, 03 Civ. 4173, 2005 U.S. Dist. LEXIS 45744
    (S.D.N.Y. Aug. 3, 2005) ..............................................................................6, 12

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) .............................................................5

*Bates v. Delgais*, Civ. No. 3:06cv1848, 2009 U.S. Dist. LEXIS 93796
    (D. Conn. Oct. 2, 2009) ..............................................................................7

*Chapple v. Fahnestock & Co., Inc.*, No. 03–4989 (TLM), 2010 WL 3118638
    (E.D.N.Y. Aug. 5, 2010) .............................................................................4

*Fenje v. Feld*, 301 F.Supp.2d 781 (N.D. Ill., 2003) ...................................................6

*Ferrar v. Federal Kemper Life Assurance Co.*, 198 F. Supp. 2d 940 (S.D. Ohio, 2002) ...............6

*Gaffney v. Department of Information Technology and Telecommunications*,
    579 F. Supp. 2d 455, 459 (S.D.N.Y. 2008) .........................................................4

*Gentile v. County of Suffolk*, 923 F.2d 142 (2d Cir. 1991) ...........................................4

*Hester v. BIC Corp.*, 225 F.3d 178 (2d Cir. 2000) ................................................9, 12

*Palmeri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) .......................................................1

*Park W. Radiology v. CareCore Nat. LLC,* 675 F. Supp. 2d 314 (S.D.N.Y. 2009) .......................4

*SEC v. Stoker*, No. 11-CV-7388 (JSR) (S.D.N.Y. July 31, 2012) .....................................2

*United States v. Baratta*, 397 F.2d 215 (2d Cir. 1968) ..............................................16

*United States v. Brown*, 938 F.2d 1482 (1st Cir. 1991) ...............................................6

*United States v. Conradt*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 1626
    (S.D.N.Y. Jan. 22, 2015)...............................................................................3

*United States v. Earls*, 704 F.3d 466 (7th Cir. 2012)................................................9

*United States v. Grinage*, 390 F.3d 746 (2d Cir. 2004) ...........................................9, 12

**CASES (cont.)**                                                          **PAGE(S)**

*United States v. Gupta*, No. 11-CR-907 (JSR) (S.D.N.Y. June 18, 2012) ....................................2

*United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) ................................................................1

*United States v. Popejoy*, 578 F.2d 1346 (10th Cir. 1978) ...........................................................6

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) ......................................................6, 9, 11, 12

*United States v. Subeh*, 04-cr-6077T, 2006 U.S. Dist. LEXIS 45514
    (W.D.N.Y. July 5, 2006) ...........................................................................................................6

*United States v. Whitman*, No. 12-CR-125 (JSR) (S.D.N.Y. Aug. 17, 2012) ................................2

**RULES, STATUTES, OTHER AUTHORITIES**

Fed. R. Evid. 401 ......................................................................................................................1, 3

Fed. R. Evid. 402 ................................................................................................................ *passim*

Fed. R. Evid. 403 ................................................................................................................ *passim*

Fed. R. Evid. 602 .........................................................................................................................15

Fed. R. Evid. 701(b)........................................................................................................... *passim*

Fed. R. Evid. 801(c) .....................................................................................................................15

4 Sand et al., Modern Federal Jury Instructions 71.01, Instr. 71-2 (2015) ....................................2

Weinstein's Federal Evidence § 701.03[3] (2d Ed. 2015)...............................................................9

Plaintiff Securities and Exchange Commission (the "Commission"), respectfully submits this Memorandum in Support of its Motion *In Limine* to Preclude Admission of Irrelevant, Inadmissible, and Unduly Prejudicial Evidence, and asks the Court to preclude the admission of: (1) evidence, argument, or suggestion that the law of insider trading has changed; (2) evidence that the defendants or witnesses were indicted, pled guilty, and had guilty pleas vacated; (3) Trent Martin's unfounded belief that Michael Dallas wanted him to trade SPSS securities; (4) Thomas Conradt's opinion that Martin did not tip him for a personal benefit; (4) Conradt's motivation for doing apartment chores; and (5) the June 1, 2009 text message that Dallas and Martin have no recollection of and are not competent to testify about.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmeri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under Federal Rule of Evidence 401, evidence is only relevant when it has "any tendency to make a fact more or less probable than it would be without the evidence."  Further, "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.

## ARGUMENT

## I.   THE "IDEA" THAT THE INSIDER TRADING LAWS HAVE CHANGED IS INADMISSIBLE UNDER RULE 403.

Argument or evidence concerning the perceived change in insider trading law resulting from the Second Circuit's decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) is

irrelevant and should not be admitted or argued at trial.  The Commission expects defendants to

both argue and introduce testimony from witnesses that the insider trading law has changed.  *See*

Payton Dep. Tr. 95:7-18, Ex. 1 (attempting to distinguish between Payton's current view of

insider trading law and his understanding in 2009).[1]  This argument and evidence would only

serve to confuse the jury and unfairly prejudice the Commission.[2]

As an initial matter, the parties' perception of the effects of *Newman* on insider trading

law is not relevant to a fact-finder.  A witnesses' perception is similarly irrelevant.  Any

testimony or argument from defense counsel or witnesses regarding the impact of *Newman* or

suggesting that the law has changed is improper and would usurp the role of the Court.

As this court has instructed, the jury's duty is to follow that law as the court gives it to

them.  If any attorney or other person states a legal principle different from the court's

instructions, the jury must follow the court's instruction.  *See United States v. Whitman*, No. 12-

CR-125 (JSR) (S.D.N.Y. Aug. 17, 2012), Dkt. 102 (Jury Instructions at 2); *SEC v. Stoker*, No.

11-CV-7388 (JSR) (S.D.N.Y. July 31, 2012), Dkt. 89 (Jury Instructions at 1); *United States v.*

*Gupta*, No. 11-CR-907 (JSR) (S.D.N.Y. June 18, 2012), Dkt. 102 (Jury Instructions at 2).  *See*

*also* 4 Sand et al., Modern Federal Jury Instructions 71.01, Instr. 71-2 (2015) ("[Y]ou must take

the law as I give it to you.  If any attorney has stated a legal principle different from any that I

state to you in my instructions, it is my instruction that you must follow.").

---

[1]     All exhibits referenced herein are exhibits to the Declaration of A. Kristina Littman in
Support of Securities and Exchange Commission's Motions *in Limine*.

[2]     In addition to Payton's testimony and counsel's repeated arguments concerning a
purported change in the law in their numerous briefs and motions, Thomas Conradt, who is
likely to testify at trial, testified during discovery that "[t]he law has changed" with regard to the
facts surrounding this case. Conradt Dep. Tr. 27:7-14 and 28:23-29:6, Ex. 3.  He went on to
testify that questioning about his relationship with Martin in the wake of the *Newman* decision
"only strengthened [his] resolve" to attempt to set aside his settlement relating to his conduct.  *Id.*
at 220:3-18.

2

There is no possible relevance for this argument or testimony and its introduction will only serve to confuse the jury or unfairly prejudice the Commission.  For these reasons it is inadmissible under Rule 401 and 403 of the Federal Rules of Evidence.

## II.  EVIDENCE CONCERNING THE FACT THAT DEFENDANTS AND WITNESSES WERE INDICTED, PLED GUILTY, OR HAD THEIR PLEAS VACATED IS INADMISSIBLE.

Daryl Payton, Benjamin Durant, Thomas Conradt, David Weishaus, and Trent Martin were indicted and charged with securities fraud and conspiracy to commit securities fraud based on the same facts as alleged in the Amended Complaint.  Subsequently, Payton, Conradt, Weishaus, and Martin all pled guilty.  On January 22, 2015, the Honorable Andrew L. Carter, United States District Judge for the Southern District of New York, vacated those guilty pleas, finding in the wake of the Second Circuit's decision in *United States v. Newman* that there was an insufficient factual basis for those pleas based on *Newman's* "clarification" of the elements of criminal insider trading.  *United States v. Conradt*, No. 12-cr-887, 2015 U.S. Dist. LEXIS 1626, *2-3 (S.D.N.Y. Jan. 22, 2015) (stating that the court was skeptical that the "pleas were sufficient in light of *Newman*'s clarification of the . . . tippee knowledge requirements of tipping liability . . . .").  Subsequently, on January 30, 2015, Judge Carter issued an order of *nolle prosequi* dismissing the charges against Conradt and Weishaus without prejudice.  *Conradt*, Dkt. No. 170.

This case concerns whether defendants have civil liability for insider trading, and not culpability under a criminal standard.  The fact that they (and others) were indicted, pled guilty (Payton, Conradt, and Martin), and had those charge dismissed is not relevant for any conclusion the jury must reach.  Only relevant evidence that would tend to make a fact more or less probable is admissible.  *See* Fed. R. Evid. 402.  "[A] judgment of acquittal does not necessarily mean that the defendant is innocent; it means only that the government has not met its burden of proof

beyond a reasonable doubt." *Gentile v. County of Suffolk*, 923 F.2d 142, 161 (2d Cir. 1991). Similarly, evidence that the Court vacated any defendant's or witnesses' guilty pleas or that the United States Attorney's Office opted to dismiss the indictment is irrelevant.  Such decisions do not show that the defendants or witnesses are not liable in the present, civil case.  *See Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc.*, No. 08 Civ. 7508(SAS), 2013 WL 1155420, at *7 (S.D.N.Y. Mar. 20, 2013) ("References to other lawsuits including their factual allegations and evidence are inadmissible" because they are irrelevant).

The nonexistent probative value of the fact that defendants or witnesses were indicted, pled guilty, and had their please vacated, is of course, substantially outweighed by the risk of confusing and misleading the jury and unfairly prejudicing the Commission.  *See* Fed. R. Evid. 403; *Abu Dhabi Comm. Bank*, 2013 WL 1155420, at *7 & n.69 ("[A]ny probative value of references to [other litigations] is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time under FRE 403[.]") (quoting *Park W. Radiology v. CareCore Nat. LLC,* 675 F. Supp. 2d 314, 330 (S.D.N.Y. 2009)); *Gaffney v. Department of Information Technology and Telecommunications*, 579 F. Supp. 2d 455, 459 (S.D.N.Y. 2008) (precluding evidence concerning plaintiff's prior lawsuit that is "for the most part irrelevant to this matter and potentially confusing to the jury"); *Chapple v. Fahnestock & Co., Inc.*, No. 03–4989 (TLM), 2010 WL 3118638, *1 (E.D.N.Y. Aug. 5, 2010) (holding that "the trial of this matter is to focus on the facts of the case, not the litigation history of other lawsuits" and "[a]ny probative value that the details of the proceedings in those lawsuits might have is substantially outweighed by the danger of unfair prejudice were those details to be presented to the jury").

As the Second Circuit has noted, "courts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007).  This reluctance should be the same, if not stronger, when the litigation involves a criminal case with a significantly different burden.

For these reasons *both* parties and all witnesses should be precluded from referring to the defendants' and witnesses' indictment, guilty pleas, and the dismissal of the criminal case.[3]

### III.      MARTIN'S "IMPRESSION" THAT DALLAS WANTED HIM TO TRADE LACKS FOUNDATION AND IS INADMISSIBLE UNDER RULE 403.

The Commission will prove at trial that based on their relationship Michael Dallas had a reasonable expectation that Trent Martin would not trade or tip the information about the SPSS acquisition.  The Commission expects defendants to argue that Dallas actually expected Martin to trade.  To that end, defendants will likely seek to admit portions of Martin's deposition where Martin testifies about what he believed Dallas intended.  This unfounded belief testimony is inadmissible.

In his deposition testimony, Martin gives contradictory – and unsupported – statements as to what he believes Dallas wanted him to do (or not do) with the SPSS information and why Dallas had given him the SPSS information.  However, under a clear application of Federal Rule of Evidence 701(b), as well as Rules 402 and 403, this baseless speculation should be precluded.

---

[3]      While the fact of the guilty pleas should not be admissible, the Commission has moved *in limine* to admit certain statements of fact made by Payton during his plea colloquy.  However, if the Commission's motion is granted, these facts, which are admissions of a party opponent, would be sanitized to omit any reference to the fact that they were made during a plea colloquy.  Similarly, the Commission has moved *in limine* to admit certain statements made by David Weishaus.  Again, if granted, the Commission would omit any reference to the fact that they were made in connection with an indictment or guilty plea hearing.

As the Second Circuit has held:

> When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of <u>Rule 701</u>, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find.

*United States v. Rea*, 958 F.2d 1206, 1217 (2d Cir. 1992); *see also Alvarez v. Nicholson*, 03 Civ. 4173, 2005 U.S. Dist. LEXIS 45744, *21-*22 (S.D.N.Y. Aug. 3, 2005) (finding that opinions where the witness has not provided "objective bases for his opinion" is "speculation" that "falls outside Rule 701(b)).

Based on this rationale, it is not surprising that courts routinely reject unsupported lay opinion testimony regarding another party's state of mind.  *See United States v. Subeh*, 04-cr-6077T, 2006 U.S. Dist. LEXIS 45514, *12 (W.D.N.Y. July 5, 2006) (noting a witness is "not competent to testify as to what someone else's state of mind was"); *see also United States v. Brown*, 938 F.2d 1482, 1488 (1st Cir. 1991) ("Testimony regarding the inchoate state of mind of a defendant does not fall within the category of allowable opinion testimony by lay witnesses."); *United States v. Popejoy*, 578 F.2d 1346 (10th Cir. 1978) (witness not permitted to testify where question asked of witness would require him to "interpret the mind" of the defendant); *Fenje v. Feld*, 301 F.Supp.2d 781 (N.D. Ill., 2003) (a witness is not competent to testify as to another person's state of mind); *Ferrar v. Federal Kemper Life Assurance Co.*, 198 F. Supp. 2d 940 (S.D. Ohio, 2002) (witness's testimony based on her own belief of her deceased husband's belief was inadmissible as incompetent).

But numerous times during Martin's deposition, defendants elicited such unsupported lay opinion.  In particular, during his deposition (and over objection), Martin was asked a series of questions about his opinion as to why Dallas told him the SPSS information:

> Q. Do you think he told you SPSS's name in order to seek your moral support and reassurance?
>
> A. No, I don't.
>
> Q. Do you believe that he told you the anticipated date of the transaction in order to communicate to you the magnitude and size of the transaction?
>
> A. No, I don't.
>
> Q. Do you think he told you the anticipated dates of the transaction in order to seek your moral support and reassurance?
>
> A: No, I don't.
>
> Q: Do you believe he told you the anticipated transaction price in order to seek your moral support and reassurance?
>
> A: No.
>
> Q. How about in July 2009, when he gave you the updated information on the timing of the deal, was it your impression that he told you that because he wanted your moral support, reassurance and advice?
>
> A: No.

Martin June 26, 2015 Dep. Tr. 85:24-87:2, Ex. 2 (objections made to the form of each question omitted).

Importantly, Martin never was asked, and never testified, as to any bases in fact for these beliefs or impressions. Without that foundation, this testimony is of no use to the jury and is not admissible. *See, e.g.*, *Bates v. Delgais*, Civ. No. 3:06cv1848, 2009 U.S. Dist. LEXIS 93796, *2-*3 (D. Conn. Oct. 2, 2009) (granting motion *in limine* to exclude opinion testimony concerning another party's motivation as inadmissible under Rule 701).

Moreover, not only did Martin not provide foundation for his beliefs, but he also conceded on numerous occasions that he really was only speculating as to why Dallas provided the information and whether he wanted him to trade. For example:

> Q:  And in fact, as you were walking away from the lunch, did you think that Mr. Dallas wanted you to trade on the information he'd just given you?
>
> A:  I don't know why he told me the information.  You know, *if I were to speculate* around why he did, you know, providing the information that he did, I would say – you know, I thought that he wanted me to trade on it.

Martin June 26, 2015 Dep. Tr. 56:22-57:5, Ex. 2 (objection omitted, emphasis added).[4]  Martin later conceded that he really did not know for sure why Dallas told him, and was only speculating and testifying about the impression in his own mind: "so I'll tell you what I - you know, in my mind - well, let me just - I don't know why Mike Dallas told me the information. I don't know what was going through his head as to why he disclosed it, but I can tell you when I left the lunch I was under the view that the information was perhaps given to me to trade." *Id.* at 109:22-110:11.  Defendants elicited similar testimony (in slightly different forms) repeatedly throughout the deposition – over plaintiff's objecting to the form of the question every time. However, defendants never cured the defects in the questions by asking about the factual basis for these beliefs and impressions.

The only time that Martin expanded upon the basis for *any* of his beliefs (upon questioning by a third-party's attorney) Martin testified:

> Q:  Mr. Martin, is it fair to say that Mr. Dallas did not object to you trading on the information he gave you about the SPSS acquisition so long as you didn't disclose that information to others?
>
> A:   As I said earlier, I don't know for sure why he told me what he told me, but in my mind my interpretation was that he had passed on - I would  speculate that he had passed on that information for me to trade on, but I know –

---

[4]     This testimony contradicted Martin's Declaration where he stated under oath: "Based on, among other things, our history of sharing confidential information, my knowledge of Dallas's position as a lawyer in the mergers and acquisition group of a law firm, and my professional and educational background, I knew that the information that Dallas had disclosed to me was nonpublic and, if disclosed, would affect the price of SPSS securities, and that Dallas expected me to maintain its confidentiality and to not tell anyone."  Martin Declaration ¶ 20, attached as Ex. 19.

Q: What is that speculation based on?

A: Based on the fact that he gave me all the specific details around the deal and then later reiterated further details about the deal when it was closing.

Martin June 26, 2015 Dep. Tr. 212:10-213:2, Ex. 2 (objections omitted).

Thus, even where Martin does attribute a belief to a particular fact – that Dallas provided very specific information to him – he further concedes that his conclusion that Dallas wanted him to trade is simply his speculation and he does not "know for sure why he told me what he told me."  He admits that his *impression* of what was in Dallas's head is pure speculation.

While defendants are free to argue whatever conclusion they would like about the facts of that conversation, the jury will not be aided by Martin's baseless interpretation of Dallas's mindset.  *See* Weinstein's Federal Evidence § 701.03[3] (2d Ed. 2015) (noting that lay opinion "does not assist the trier of fact" where "the trier of fact is perfectly capable of perceiving, understanding, and interpreting" the evidence, or when "[t]he testimony is mere speculation."). Indeed, because the conversation can speak for itself, rather than helping the jury, allowing Martin's speculative conclusions would impermissibly "usurp[] the jury's function." *United States v. Grinage*, 390 F.3d 746, 751 (2d Cir. 2004) (finding witness's interpretation of conversations inadmissible); *Hester v. BIC Corp.*, 225 F.3d 178, 184-85 (2d Cir. 2000) (noting that the jury was "in as good a position as the witness" to interpret the relevant motivations); *see also United States v. Earls*, 704 F.3d 466, 472-73 (7th Cir. 2012) ("Rule 701 does not extend so far as to allow a witness to serve as the thirteenth juror…").  Martin's conclusions should be excluded.

Finally, even if Martin's impressions of Dallas's motivations could meet Rule 701's standard, they should be excluded under Federal Rule of Evidence Rule 403.  *See Rea*, 958 F.2d

at 1216 (noting that the Court can exclude evidence under 403 that would be sufficient under

Rule 701 for various reasons, including that its helpfulness is outweighed by the risk of unfair

prejudice).  Obviously the nature of the Martin/Dallas relationship and the content of this

conversation are relevant and important.  However, Martin's self-serving, unsupported testimony

that he had a speculative belief that he was permitted to trade and thus, did not outright betray

Dallas by trading in SPSS securities, provides no probative value, and risks being overvalued by

the jury, and should be excluded.

For the reasons set forth herein, all portions of Martin's testimony in which he testifies as

to his impression or belief as to i) why Dallas told him the SPSS information and ii) whether

Dallas wanted him to trade with that information, should be excluded.

## IV.  CONRADT'S OPINION ABOUT WHY MARTIN TIPPED HIM IS INADMISSIBLE UNDER RULES 701 AND 403.

The Commission expects defendants to argue that Martin received no personal benefit for

tipping Conradt.  To that end, defendants will likely seek to introduce testimony from Conradt

concerning his opinion about why Martin tipped him.  This unsupported opinion testimony is

inadmissible under Rules 701 and 403.

In Conradt's deposition, defendants elicited testimony regarding Conradt's opinions as to

why Martin told him about IBM's acquisition of SPSS.  Many of the same Rules that preclude

Martin from speculating about Dallas's frame of mind, also preclude Conradt from testifying

about his own speculation as to Martin's motivations.  *See* Federal Rules of Evidence 701, 402,

and 403.

The following questioning from Conradt's deposition is an example of the type of

improper questioning that should be precluded from trial:

> Q: Did you believe that Mr. Martin was sharing this information with you because of some benefit you had previously provided to him financial or otherwise?
>
> A: No.

Conradt Dep. Tr. 209:23-210:1, Ex. 3.

> Q: Did you understand Mr. Martin to be giving you the information about SPSS in the expectation that you, in the future, would provide him with some type of benefit in exchange for the information?
>
> A: No.

*Id.* at 210:14-18.

> Q: And you didn't have an understanding that he was providing you that information because of some benefit you had provided to him?
>
> A: No.

*Id.* at 216:7-11 (objection omitted).

> Q: Did you provide any personal benefits to Mr. Martin, to your understanding, that caused him to share information with you about SPSS?
>
> A: No.

*Id.* at 227:5-8 (objection omitted)

These questions are improper because Conradt cannot provide any basis for his "belief" or "understanding" as to why or why not Martin provided the SPSS information to him.  Indeed, Conradt testified that Martin did *not* tell Conradt why he told him about SPSS.  Conradt Dep. Tr. 112:9-113:5, Ex. 3.  Thus, the defect that exists in the deposition testimony will persist at trial. For this reason alone, defendants should be precluded from asking Conradt for his opinion about why Martin tipped him.  *United States v. Rea*, 958 F.2d 1206, 1217 (2d Cir. 1992) ("When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701"); *see also Alvarez*, 2005 U.S. Dist.

LEXIS 45744, *21-*22 (finding that opinions where the witness has not provided "objective bases for his opinion" is "speculation" that "falls outside Rule 701(b)).

Lay opinion evidence is only admissible if it there is a rational basis in fact for the opinion and it would be helpful to the jury to hear the opinion.  *See Rea*, 958, F.2d at 1217.  But Conradt has provided no such rational basis in fact.  Moreover, it is difficult to conceive of what information Conradt *could* provide as a basis that would have probative value to the jury in evaluating whether the objective facts establish Martin did or did not intend to benefit Conradt. *See Grinage*, 390 F.3d at 751 (finding witness's interpretation of conversations inadmissible); *Hester*, 225 F.3d at 184-85 (noting that the jury was "in as good a position as the witness" to interpret the relevant motivations).

Finally, even if Conradt's opinions of Martin's motivations could meet Rule 701's standard, they should be excluded under Federal Rule of Evidence Rule 403.  *See Rea*, 958 F.2d at 1216 (noting that the Court can exclude evidence under 403 that would be sufficient under Rule 701 for various reasons, including that its helpfulness is outweighed by the risk of unfair prejudice).  There is no probative value to Conradt's opinions of Martin's motivations and because those opinions could be misinterpreted or misused by the jury, they should be precluded. Therefore, under Rule 403, and for the reasons set forth above, defendants should be precluded from eliciting such testimony.[5]

---

[5]     This testimony is even more suspect given that Conradt conceded that he had read a copy of Martin's deposition testimony prior to his own deposition (provided by his attorney) because he was "very interested to see what he had to say" because he "had had heard that, you know he had, you know, some of the similar, you know, concerns that I did about whether or not there was any benefit between me and him, and I was just interested to see what he had to say about it."  Conradt Dep. Tr. 32:3-32:19, Ex. 3.

## V.      CONRADT'S MOTIVATION FOR HANDLING APARTMENT TASKS IS IRRELEVANT AND INADMISSIBLE.

At trial the Commission will present evidence showing that Conradt did significant tasks relating to the apartment, including securing a reduction in rent, securing a reduction in the cable bill, arranging for repairs, hiring a cleaning person, etc., such that a jury could conclude that Martin tipped Conradt as part of a pattern of exchanging favors.  The Commission expects defendants will attempt to undercut this argument by introducing evidence that Conradt did not think he was doing favors for Martin.  This evidence is irrelevant because the relevant issue for the jury to decide is what *Martin* thought about Conradt's favors.  Not why Conradt actually did them.

Upon questioning from defendants, Conradt stated that his reason for doing apartment related tasks such as negotiating a rent reduction, a lower cable bill, hiring a cleaning service, and arranging for certain repairs, was to benefit himself, and maybe because he "felt bad," but not to benefit Martin and not because he expected Martin to give him something in return.  *See* Conradt Dep. Tr. 107:17-109:5; 205:20-209:9, Ex. 3.  Defendants should be precluded from eliciting similar testimony from Conradt at trial because his own motivation is not relevant to this case and could be unfairly prejudicial.  The objective facts of what Conradt did around the apartment and admissible and relevant.  Conradt's uncommunicated, subjective motivation is not.  Such testimony should be precluded under Federal Rule of Evidence 402 and 403.

The only possible relevance to Conradt's subjective motivation for these acts would be if it had any impact on Martin's view of the relationship.  But there is no evidence that Conradt communicated his personal motivation to Martin or that Martin otherwise knew why Conradt did those things.  Conradt certainly did not tell Martin he was doing these things "for himself." Therefore, because the only relevant questions relating to their relationship is why Martin took

the action of tipping Conradt the SPSS information (and whether it was for a benefit), and because what was in Conradt's own head could not have impacted Martin's thinking, this evidence is irrelevant.  It should be precluded under Rule 402.

The reason defendants may seek to admit this evidence is obvious.  They would like the jury to make the improper connection that, if Conradt did these tasks around the apartment for himself, and not Martin, then there was no reason for Martin to feel any need to thank Conradt or to benefit Conradt in any way.  But there is a fatal factual chasm to that logic – there is no evidence Martin knew Conradt's motivation.  Indeed the opposite is true.  Numerous emails exchanged among Conradt and Martin show that Conradt was doing these tasks for the apartment and that Martin thanked him for doing these tasks.  Admitting this evidence, and essentially asking the jury to make such a leap would be completely improper.  Because of the unfair prejudicial impact of this type of evidence, and because it has no probative value, defendants should be precluded from eliciting this evidence under Rule 402 and Rule 403.

**VI.      DEFENDANTS SHOULD BE PRECLUDED FROM ADMITTING THE JUNE 1, 2009 TEXT MESSAGE BECAUSE NO WITNESS CAN COMPETENTLY TESTIFY ABOUT IT AND IT IS INADMISSIBLE HEARSAY.**

Defendants believe that a purported text message sent from Martin to Dallas on June 1, 2009, establishes that contrary to his testimony, Dallas expected Martin to trade based on the SPSS information.  Defs.' Mem. in Support of Summary Judgment at 22; June 1, 2009 Text Message, Ex. 4.  Defendants undoubtedly intend to attempt to use this text message to show that Martin did not breach a duty of trust or confidence.  *Id.*

The problem for defendants, however, is that neither Dallas nor Martin can competently testify about the text message.  At the renewed deposition, defendants asked Dallas numerous questions about his recollection of this text message.  He unequivocally answered that he had no

14

recollection of receiving the text message, or responding to the text message, or of having any conversation where Martin said he traded SPSS until the middle of July.  Dallas Aug. 26, 2015 Dep. Tr. 206:20-210:19, Ex. 5.  Dallas was clear about his complete inability to testify about the document or events surrounding it, stating "You're asking me about a text message I don't recall receiving or reading, sitting here today, and you're asking me to postulate about the state of mind of the person sending it.  I don't think I can answer that."  *Id.* at 209:12-15.

      Martin's testimony about the text message is similarly defective.  Martin had no recollection of sending this text message, or receiving any response to it.  Martin Sept. 3, 2015 Dep. Tr. 237:22-238:3, Ex. 6.  He could not recall any conversations with Dallas surrounding the text message.  *Id.* at 223:16-20.  He did not know what the document was and the document did not refresh his recollection.  *Id.* at 236:16-237:4; 237:22-238:3.  Like Dallas, Martin was also clear about his inability to testify competently about the document, saying "look, I'm reading this off an email.  I don't know the source of it. . . . I don't know if there was anything texted between that or who pulled this together or how it was presented."  *Id.* at 236:19-25.[6]

      The June 1, 2009 text message is inadmissible because no witness can testify to any personal knowledge or recollection concerning the document.  Federal Rule of Evidence 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Additionally, the June 1, 2009 text message is inadmissible hearsay.  It is undoubtedly an out of court statement defendants "offer to prove the truth of the matter asserted," namely that Martin told Dallas he was trading.  Fed. R.

---

[6]     Adding further uncertainty to the text exchange is a document dated July 2, 2009 that appears to depict the exact same message occurring over a month later.  *See* Ex. 16.  Martin testified again that he had no recollection of sending Dallas a July 2, 2009 text message or receiving any response to it.  Martin Dep. Tr. 242:20:-243:4, Ex. 6.  Thus, for the same reasons, the July 2, 2009 text message should also be excluded.

Evid. 801(c).  Moreover, the text message would not fall under any exception to the prohibition against hearsay that would make it otherwise admissible.

The Court should also exclude any testimony about the June 1, 2009 text message. Dallas and Martin have no personal knowledge of the text message.  And while a witness's recollection may be refreshed by writings which are not in themselves admissible in evidence, *United States v. Baratta*, 397 F.2d 215, 222 (2d Cir. 1968), the court must ensure "that the witness actually has a present recollection and that otherwise inadmissible evidence does not slip in inadvertently for its truth."  *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 93 n. 17 (2d Cir. 1984).  In *20th Century Wear*, appellant argued that the trial court erred in allowing the use of a tape recording to refresh a witness's recollections where the witness repeatedly disclaimed remembering the details of the conversation.  *Id*.  The Second Circuit instructed the court on retrial to "be careful to separate what the witness remembered from what was played on the tape."  *Id*.  Because neither Dallas nor Martin was "refreshed" using the text message they cannot testify about its content.

Because Martin does not recall anything about the text message, and does not recall anything about any conversations relating to the text message, its meaning is entirely unclear. Martin could have been referring to another stock – indeed he is an analyst, he could have been using the phrase "hit" in another manner, he could have been making a joke, or he could have been testing Dallas to sense his reaction, knowing Dallas did not want him to trade.  Because even Martin can only speculate about the text's meaning, and because Dallas has no recollection whatsoever of whether he even saw it, what it meant, or whether there was any subsequent conversation – other than recalling he had no knowledge at that time that Martin intended to buy SPSS – the jury would simply be left to speculate about the text's true meaning and impact on

16

this case.  Thus, it has no probative value, and could only serve to confuse the jury and unfairly

prejudice the Commission.  *See* Fed. Rule Evid. 403.  This evidence should be excluded.


Dated:  September 14, 2015                    Respectfully Submitted,



                                              SECURITIES AND EXCHANGE COMMISSION


                                              s/_____
                                              David L. Axelrod
                                              Scott A. Thompson
                                              Catherine E. Pappas
                                              A. Kristina Littman
                                              Counsel for Plaintiff
                                              One Penn Center
                                              1617 JFK Blvd, Suite 520
                                              Philadelphia, PA  19103
                                              (215) 597-3100