

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
PHILADELPHIA REGIONAL OFFICE
1617 JFK Boulevard, Suite 520
Philadelphia, Pennsylvania 19103

Catherine E. Pappas
Senior Trial Counsel
(215) 597-0657
pappasc@sec.gov

March 7, 2016

*Via ECF*
The Honorable Jed S. Rakoff
United States District Judge
United States Courthouse, Room 1340

    Re:    *SEC v. Payton et al.,* No. 14-cv-4644 (JSR)

Dear Judge Rakoff:

    On February 29, 2016, a jury found defendants Benjamin Durant, III ("Durant") and Daryl M. Payton ("Payton") liable for insider trading. The evidence presented at trial established Defendants' deliberation, greed, willingness to lie to protect themselves, and their belief that rules and securities laws do not apply to them. Plaintiff, the United States Securities and Exchange Commission, hereby submits this letter in support of the entry of judgments enjoining Defendants from violating Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, ordering Defendants to pay disgorgement and prejudgment interest, and imposing on Defendants meaningful, treble civil penalties. Defendants' misconduct, acts of concealment and lies, combined with the absence of criminal sanctions, warrants the imposition
 of the requested relief.

**This Court Should Enjoin Defendants from Future
<u>Violations of Section 10(b) and Rule 10b-5 Thereunder</u>.**

    Defendants were, at the time of their misconduct, sophisticated registered representatives who were well trained in the laws regarding insider trading. Under applicable law, injunctive relief is both necessary and appropriate.

    Section 21(d) of the Exchange Act authorizes the Commission to seek injunctive relief when a person or entity "is engaged or is about to engage" in conduct constituting a violation of the Act. 15 U.S.C. § 78u(d)(2). To obtain an injunction, the Commission must establish a substantial likelihood that the defendant, if not enjoined, will again engage in the illegal conduct. *See SEC v. Kinnucan*, 9 F. Supp. 3d 370, 375 (S.D. N.Y. 2014); *SEC v. Gupta*, No. 11 Civ. 7566, 2013 U.S. Dist. LEXIS 102274, at * 7 (S.D.N.Y. July 17, 2013), *aff'd* 569 Fed. Appx. 45 (2d Cir.), *cert. den. sub nom Rajaratnam v. U.S.*, 134 S. Ct. 2820 (2014). In considering whether there is a substantial likelihood that a defendant will commit future violations, courts in the Second Circuit consider various factors, including: (1) the fact of defendant's liability for past illegal conduct; (2) the degree of scienter involved; (3) the isolated or repeated nature of the violations; (4) whether the defendant continues to maintain that his past conduct

was blameless; and (5) whether, because of his professional occupation, the defendant will be in a position where future violations could be anticipated.  *Gupta*, 2013 U.S. Dist. LEXIS 102274, at *7-8, *citing SEC v. Cavanaugh*, 155 F.3d 129, 135 (2d Cir. 1998).  *See also Kinnucan*, 9 F. Supp. 3d at 375.

These factors weigh heavily in favor of the imposition of an injunction here.  First, the jury found Defendants liable on the SEC's claim of illegal insider trading.[1]  Second, their conduct involved a high degree of scienter.  They traded in SPSS on the basis of material, nonpublic information, notwithstanding their knowledge of the policies and prohibitions against the same.[2]  Durant liquidated several assets at a substantial loss and incurred a tax penalty in order to invest in SPSS securities.[3]  Payton rushed to place trades before the acquisition occurred.[4]  They each realized hundreds of thousands of dollars in ill-gotten gains.  They then embarked on a path of deception and lies to hide what they had done, including meeting with co-conspirators at the Morgans Hotel to coordinate stories;[5] lying to their employer;[6] opening new brokerage accounts under false pretenses (Payton only);[7] lying to the Internal Revenue Service; and lying through the trial in this matter.[8]  *See SEC v. Suman*, 684 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (finding lies to Canadian regulators and other acts of concealment weighing in favor of injunctive relief).

Third, their conduct was not isolated.  Each placed multiple trades in SPSS securities, Durant placing over twenty trades over the course of three weeks.[9]  *See SEC v. Contorinis*, No. 09 Civ. 1043, 2012 U.S. Dist. LEXIS 19961, at *11 (S.D.N.Y. Feb. 3, 2012), *aff'd* 743 F.3d 296, 301 (2d Cir. 2014), *cert. den*.  2105 U.S. LEXIS 7360 (Nov. 19, 2015) (although only trading in one company, multiple trades over a series of weeks weighs in favor of injunctive relief).  Fourth, Defendants continue to maintain they are blameless for their past conduct.  They have engaged in concealment and evasion for over six years, including through discovery and the trial of this matter.  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1478 (2d Cir. 1996) (finding injunctive relief appropriate where defendant's testimony was "belligerently evasive," infused with claims of accidental misconduct and denials of wrongdoing).  Indeed, to date, neither has acknowledged the wrongfulness of their actions.

Finally, Defendants are young, educated, sophisticated, and experienced in the securities industry -- all facts weighing in favor of the likelihood that they could again be in a position where they can violate the law.[10]  *SEC v. Contorinis*, 743 F.3d 296, 308 n.6 (2d Cir. 2014), *cert. denied*, 2015 U.S. LEXIS 7360 (Nov. 19, 2015) (district courts are more likely to deem injunctive relief inappropriate when sentencing relatively naive offenders whose illegal behavior does not suggest calculating and carefully premeditated fraud).

In the final analysis, both the jury's finding that Defendants committed securities fraud and the evidence presented at trial such as the ease with which Defendants lied to their employer and lied to the

---

[1]  Dkt. No. 136.
[2]  Dkt No. 133, Instruction 8; Trial Transcript ("Tr.") at pp. 427-433, 680-687.
[3]  Tr. at pp. 726-731, Plaintiff's Exhibit 150G.
[4]  Tr. at p. 521.
[5]  *See, e.g.*, Tr. at pp. 280-283, 514, 577, 642-643, 746-749.
[6]  *See, e.g.*, Transcript at pp. 540-547, 760-764.  Plaintiff's Exhibits 137, 138.
[7]  *See, e.g.*, Tr. at pp. 526-533; Plaintiff Exhibit 157B, 157C, 158B, 158C, 180.
[8]  Tr. at pp.  534-540; 750-759; Plaintiff's Exhibits 209, 230A.
[9]  Plaintiff's Exhibits 400, 402.
[10] *See, e.g.*, Tr. at pp.  415-427, 591, 674-680.

The Honorable Jed S. Rakoff
Page 3

IRS, reflect a high degree of likelihood of their future securities law violations, and thus injunctions are appropriate.

## Defendants Should Disgorge the Proceeds of their Illegal Conduct and Pay Prejudgment Interest.

This Court should also order Defendants to disgorge their ill-gotten proceeds and to pay prejudgment interest. Equity demands that Defendants not be permitted to retain the proceeds of their illegal trades or the time value of those funds over the years that they have resisted justice.

A court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Contorinis*, 743 F.3d at 301, *quoting First Jersey*, 101 F.3d at 1474-75. *See also SEC v. Haligiannis*, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007). The Commission may quantify the amount of the defendant's disgorgement liability by producing "a reasonable approximation of profits causally connected to the violation." *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998); *SEC v. Patel*, 61 F.3d 137, 139-40 (2d Cir. 1995); *Kinnucan*, 9 F. Supp. 3d at 376. In an insider trading case in which the defendant purchases stock in advance of good news, disgorgement is equal to the difference between the purchase price of the stock and the stock's price at a reasonable time after the public release of the inside information, multiplied by the number of shares the defendant purchased. *See SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 434-35 (S.D. N.Y. 2011), *citing* 15 U.S.C. § 78u-1(f). *See also*, *Warde*, 151 F.3d at 50 (2d Cir. 1998); *Patel*, 61 F.3d at 140, *citing SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983). The burden falls on the defendant to dispel any uncertainty as to the proper calculation and in determining the amount of disgorgement, and all doubts should be resolved against the defrauding party. *Contorinis*, 743 F.3d at 305; *Warde*, 151 F.3d at 50; *Patel*, 61 F.3d at 140.

It is undisputed that Defendants made their trades on the basis of material nonpublic information. *See* Court Ex. 2 (Jury Instruction No. 8). Therefore, based on this stipulation, and the jury's verdict that Defendants committed insider trading, the Court should order Defendants to disgorge all of their SPSS trading proceeds. The Commission has calculated each Defendant's illegal proceeds as described in paragraph 4 of the attached Declaration of Dustin E. Ruta. *See* Exhibit A. By these calculations, Durant must disgorge $606,351.25 and Payton must disgorge $243,860.20.[11] *Id.* at ¶ 6.

It is also within this Court's discretion to order payment of prejudgment interest. *Haligiannis*, 470 F. Supp. 2d at 385. The imposition of prejudgment interest "prevents a defendant from obtaining the benefits of what amounts to an interest free loan procured as a result of illegal activity." *Haligiannis*, 470 F. Supp. 2d at 385, *citing SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). *See also Contorinis*, 743 F.3d at 307. To calculate prejudgment interest, courts have approved the use of the interest rate imposed by the Internal Revenue Service for underpayment. *First Jersey*, 101 F.3d at 1476. *See also SEC v. Anticevic*, 05-CV-6991 (KMW), 2010 U.S. Dist. LEXIS 83538, * 15 (S.D.N.Y. Aug. 16, 2010); *Haligiannis*, 470 F. Supp. 2d at 385. Calculating prejudgment interest from August 1, 2009 through the date of judgment results in $146,051.30 in prejudgment interest due from Durant and $58,738.39 due from Payton. *See* Exhibit A, ¶¶ 5-6.

---

[11] Consistent with the precedent, the so-called "MacDonald profits" disgorgement numbers are slightly lower than the actual profit figures used at trial. *Compare* Plaintiff's Exhibit 405 ($629,472.69, $254,141.40). The profits at trial were calculated using the Defendants' actual proceeds from the liquidation of the securities, as opposed to the closing price of the options on July 28, 2009.

**This Court Should Impose the Maximum Civil Penalty Available.**

Finally, this Court should impose on Defendants substantial civil penalties to both punish them and deter such conduct in like-minded individuals.  Neither Durant nor Payton face criminal prosecution for their conduct notwithstanding the criminal nature of their actions.  The equitable remedies of injunction, disgorgement, and prejudgment interest merely restore the *status quo*.  Under the circumstances, it is important that this Court send a message, both to Defendants and to others in the industry that this conduct is illegal and will result in meaningful punishment.  Accordingly, the Commission asks that this Court impose the maximum penalties on Defendants that are permitted by law – three times the proceeds of their illegal trading MacDonald profits.

Civil penalties are an important remedy in SEC enforcement actions because disgorgement of profits alone "merely restores a defendant to his original position without extracting a real penalty for his illegal behavior."  *SEC v. Sekhri*, 98 Civ. 2320 (RPP), 2002 U.S. Dist. LEXIS 13289, *53 (S.D.N.Y. Jul. 22, 2002), *citing* H.R. Rep. No. 98-355, 98th Cong., 2d Sess., 7-8 (1984), reprinted in 1984 U.S.C.C.A.N. 2274, 2280-81.  Under the Insider Trading Sanctions Act, 15 U.S.C. § 78u-1(a), any person who commits insider trading, whether by trading or by tipping, is subject to a civil penalty in an amount up to "three times the profit gained or loss avoided" from the illegal insider trading. 15 U.S.C. § 78u-1(a)(2).  *See also SEC v. Gupta*, 569 Fed. Appx. 45, 48 (2d Cir.), *cert. den. sub nom Rajaratnam v. U.S.*,134 S. Ct. 2820 (2014) (affirming imposition of treble penalties for insider trading and noting that the Securities Exchange Act unambiguously authorizes federal courts to impose civil penalties for insider trading in amounts not to exceed three times the profit gained or loss avoided).

As with injunctive relief, courts look to a number of factors to determine an appropriate civil penalty, including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Gupta*, 2013 U.S. Dist. LEXIS 102274, at *3-4, *see also SEC v. Rajaratnam*, 822 F.Supp.2d at 432; *Haligiannis*, 470 F. Supp. 2d at 386.

Most of these factors have already been discussed above.  Defendants' illegal trading caused both the risk of loss, and actual losses, to others in the market at the time of their trades where counterparties traded without the benefit of the inside information.  Such financial losses were additional to the harm caused by insider trading in general, which damages investor confidence in the fairness and integrity of the markets, resulting in the loss of investor participation in those markets.  *See US v. O'Hagan*, 521 U.S. 642, 658 (1997).  Indeed, based on the Defendants' standing as sophisticated, licensed market-professionals, their misconduct is particularly egregious and threatening to the markets.  Finally, their repeated attempts to conspire, mislead, and outright lie, to cover up their misconduct demonstrates a very high degree of scienter that justifies the maximum penalty.

Under these circumstances, imposition of a treble penalty is necessary to effectuate Congress's purpose of making insider trading a "money losing proposition" for Payton and Durant and for any others who would consider it.  *Cf. Gupta*, 2013 U.S. Dist. LEXIS 102274, at *5 (rejecting claim that criminal penalties sufficient), *Rajaratnam*, 822 F. Supp. 2d at 434.  Accordingly, the Commission respectfully requests that this Court impose a penalty of $1,819,053.75 against Durant and $731,580.60 against Payton.

The Honorable Jed S. Rakoff
Page 5

      For the foregoing reasons, the Commission respectfully requests that the Court enter the proposed Judgments attached as Exhibits B and C.

                                    Respectfully,

                                    s/ Catherine E. Pappas
                                  Catherine E. Pappas

cc:     All Counsel of record (by ECF)
        Courtesy copy sent to Court by UPS