500 5th Avenue
43rd Floor
New York, NY 10110
(212) 796-6330



**MORVILLO LLP**

1101 17th St., NW
Suite 705
Washington, DC 20036
(202) 470-0330

GREGORY MORVILLO
(212) 796-6330
gmorvillo@morvillolaw.com

March 14, 2016

***Via ECF***
The Honorable Jed S. Rakoff
United States District Judge
United States Courthouse, Room 1340
500 Pearl Street
New York, NY 10007

      Re:    *SEC v. Payton, et al.,* No. 14 Civ. 4644 (JSR)

Dear Judge Rakoff:

      As the Court knows, the undersigned represents Benjamin Durant III in the above captioned matter. Below is Mr. Durant's opposition to the SEC's request for disgorgement, civil penalties, and injunction.

### Defendant's Objections To The SEC's Request For Disgorgement And Prejudgment Interest

      Disgorgement is meant to deprive violators of securities laws of their ill-gotten gains. *See SEC v. First Jersey Sec.,* 101 F.3d 1450, 1474 (2d. Cir. 1996). Using its equity powers, a district court may order a defendant to disgorge any profits acquired through a securities fraud violation. *See SEC v. Patel,* 61 F.3d 137, 139 (2d Cir. 1995).

      Here, the SEC is seeking $606,351.25 in disgorgement, in addition to over one hundred thousand dollars in prejudgment interest, and almost two million dollars in civil penalties. To the extent disgorgement is ordered, Mr. Durant respectfully requests that the Court limit it to the amount alleged in the SEC's amended complaint and initial mandatory disclosures, approximately $53,000. Mr. Durant raised this issue prior to the start of trial and raises it again here. The SEC should have to live with what it actually alleged. *See SEC v. Svoboda,* 409 F.Supp.2d 331, 345 (S.D.N.Y. 2006) ("The disgorgement amount should be based only on the illegal trades that are charged in the SEC's complaint and that provide the basis for Robles' civil liability."). The amended complaint articulates only two trades with specificity and Mr. Durant

should not have to disgorge more.[1] Had the SEC intended to seek additional disgorgement it should have alleged additional trades with particularity. Having chosen not to do so, it should not be the beneficiary of monies above and beyond the pleaded amount.

### An Injunction Is Not Warranted In This Case

The SEC has asked this Court to enjoin Mr. Durant from violating Section 10(b) of the Exchange Act and 10b-5. For the SEC to succeed, it must demonstrate "that there is a 'reasonable likelihood that the wrong will be repeated." *SEC v. Johnson*, No. 03 CIV. 177 (JFK), 2006 WL 2053379, at *4 (S.D.N.Y. July 24, 2006) (internal citations omitted). Because injunctive relief is a serious remedy, "the Second Circuit has placed emphasis on the need of the SEC to prove more than the mere fact of past violations, but also a realistic likelihood of recurrence." *Id.* (internal citations omitted).

"The Second Circuit has specified several factors courts may consider in determining whether an injunction is appropriate, such as: (1) the degree of scienter involved; (2) the sincerity of the defendant's assurances against future violations; (3) the isolated or recurrent nature of the infraction(s); (4) the defendant's recognition of his wrongful conduct; and/or (5) the likelihood, because of defendant's occupation, that future violations might occur." *Johnson*, 2006 WL 2053379, at *4. In addition, courts also consider the adverse impact an injunction could have on a defendant's career, a factor noticeably absent from the SEC's submission. *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972).

Obviously, the Court can enjoin Mr. Durant should it determine such a remedy is required or in the public interest. Should the Court opt to enjoin Mr. Durant, however, it should not rely on the feckless arguments the SEC makes at page two of its submission. The SEC advances an odd-ball array of facts that it claims warrant an injunction. None are persuasive. That Mr. Durant chose to incur a tax liability in an IRA to purchase securities is not cause for an injunction. Use of IRA funds has no bearing on whether his conduct was wrongful, and it does not necessitate an injunction. That he placed multiple trades in a short period of time is not a reason to enjoin him either. The conduct at issue occurred over a few weeks, and did not involve massive trades or multiple stocks. Thus, the continual time period itself should not cause the Court to enjoin Mr. Durant because it does not make the conduct more egregious. Finally, the SEC's position that Mr. Durant contested the charges in Court and that in and of itself warrants an injunction is the equivalent of seeking to punish Mr. Durant for exercising his constitutional right to trial and should not be ratified by this Court. It cannot be that the fact that Mr. Durant opted to put the SEC to its burden is a valid reason to enjoin him. These SEC arguments are untenable at best.

All that said, Mr. Durant recognizes that it is routine for courts to enjoin defendants when a jury has deemed them to have violated the securities laws. However, this often occurs because courts are concerned that the defendant could repeat the conduct. In the instant case, the SEC utterly fails to suggest that Mr. Durant is a real risk to repeat the alleged conduct. An injunction

---

[1] *See* SEC's Amended Complaint at 15, ¶ 75 (DE 32).

is a remedy of need, not one that is automatic. Mr. Durant does not have a job in the securities industry, he does not associate with the tipper in this matter, nor does he associate with any involved person but for Mr. Payton (on occasion), and he does not have access to anyone with material nonpublic information. Thus, the SEC cannot satisfy the fifth factor espoused in *Johnson*. There is no "likelihood, because of defendant's occupation, that future violations might occur." *Johnson* 2006 WL 2053379, at *4. Nothing in Mr. Durant's past or present suggests that he is likely to engage in similar conduct, and more importantly the SEC has not identified any reason it can use to demonstrate a likelihood of repeat conduct.

Finally, when deciding whether to issue an injunction, in addition to the five factors just discussed, courts will consider whether the injunction would have an adverse impact on the defendant. An injunction will negatively impact Mr. Durant's professional reputation and will damage his ability to obtain meaningful employment. Throughout the entirety of this litigation, and ever since he left Euro Pacific, Mr. Durant has struggled to find employment that would permit him to support himself. An injunction in this case undoubtedly would result in greater harm to Mr. Durant than any benefit that would inure to the SEC or any other interested parties. This case does not warrant an injunction, and for these reasons, this Court should reject the SEC's request.

### The Imposition of the Maximum Civil Penalty Is Inappropriate
### In Light Of Mr. Durant's Current Lack of Employment

Under the Insider Trading Sanctions Act, any person found liable for a violation of the securities laws is subject to a penalty up to three times the profit gained or loss avoided from the illegal insider trading. *See* 15 U.S.C. § 78u-1(a). While treble damages are allowed for such violations, they are not required. *Id.* Before imposing such a substantial civil penalty, there are several factors courts should consider, including: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Gupta,* 2013 WL 3784138, at *1 (S.D.N.Y. July 17, 2013).

Disregarding the above factors, the SEC argues that Mr. Durant should pay the maximum civil penalty because he did not "face criminal prosecution for [his] conduct, notwithstanding the criminal nature of [his] actions." The SEC's remarkable statement that Mr. Durant did not "face criminal prosecution" is categorically false. A grand jury in the Southern District of New York indicted Mr. Durant on June 25, 2014. He was scheduled for trial on those charges in February 2015 before the Honorable Andrew L. Carter. A mere four weeks before trial, the United States Attorney's Office for the Southern District of New York ("USAO") apparently determined that it could not prevail at trial and dismissed the indictment. While Mr. Durant did not go through the actual trial he most certainly went through years of the criminal process. The SEC is thus dead wrong in its description of the situation. And the fact that the USAO decided not to prosecute a case it did not believe it could win does not entitle the SEC to a three times penalty. The SEC

will have to rely on its case and the facts that are relevant here, rather than on the criminal process.

According to the SEC, Mr. Durant's conduct was particularly egregious because he was a "sophisticated, licensed market-professional."[2] However, Mr. Durant's profits do not warrant treble damages when compared to other insider trading cases. *See SEC v. Anticevic*, No. 05 CIV. 6991 KMW RLE, 2011 WL 1833299, at *2 (S.D.N.Y. Mar. 18, 2011); report and recommendation adopted, No. 05 CIV. 6991 KMW, 2011 WL 1833334 (S.D.N.Y. May 12, 2011) (noting that profits of $1,414,595.79 "were not exceptional for insider trading cases" and did not favor a maximum penalty); *Anticevic*, 2009 WL 4250508, at *6 ("Anticevic's ill-gotten gains from the Schemes—$2,056,055—were substantial, but not exceptional within the universe of insider-trading cases.").

With respect to the third factor, the SEC argues that Mr. Durant's illegal trading caused both the risk of loss, and actual losses, to others in the market at the time of his trades. This argument is also without merit. Testimony at trial established that SPSS options were thinly traded.[3] In fact, the SEC's own witness, Jordan Materna, a former employee of the Chicago Board Option Exchange, testified that on most days, the Defendants and other non-party witnesses were the only ones trading in SPSS options. There is no support in the record for the notion that other investors suffered losses here. The SEC's conclusory assertion that Mr. Durant caused both a risk of loss, and actual losses to counterparties is speculative at best, and directly contradicted by the evidence in the record.

While Mr. Durant understands that some financial penalty is likely, he does not believe a three-time penalty is proper. Mr. Durant has been unemployed since his termination from Euro Pacific. He currently lives with family members in Florida, where he has lived throughout this ordeal. Although the SEC's papers do not address this issue at all, the undisputed fact is that Mr. Durant is not employed and has not been employed for an extended period. Thus, under the above enumerated *Gupta* factors this Court should actually reduce the amount of financial penalty on Mr. Durant, not increase it to the maximum.

Despite its protestations to the contrary, the SEC is aware that Mr. Durant spent most of the last decade under criminal indictment and as the subject of an SEC investigation. Mr. Durant has little to no chance of securing another job in the financial industry, where he received most of his professional work experience. It will be extraordinarily difficult for Mr. Durant to ever possess the kind of money that the SEC seeks. In short, it is not overstating it to say that if the Court orders Mr. Durant to pay the maximum civil penalty in addition to disgorgement and prejudgment interest, Mr. Durant will have no chance to recover from this chapter of his life and once again move forward with the hope of supporting himself.

As Mr. Payton articulates at page 2 of his letter, "Even if the court determines that a civil penalty is warranted, the SEC's requested maximum penalty of treble damages would be overly

---

[2] SEC's Letter at 4. (March 7, 2016) (DE 144).
[3] Trial Tr. at 601:10-18; Plaintiff's Exhibit 408.

punitive. *See Anticevic*, 2009 WL 4250508, at *6 (awarding civil penalty of one-and-a-half times the ill-gotten gains in light of defendant's financial hardship); *Svoboda*, 409 F.Supp. at 348 (declining to award a maximum civil penalty against defendant who had a low net worth); *SEC v. Yun*, 148 F.Supp.2d 1287, 1295, 1297–98 (M.D. Fla. 2001) (imposing civil penalty of $100,000 despite SEC request for $807,000 penalty and defendant's "significant levels of misconduct" because defendant's net worth was only $264,282); *SEC v. Pardue*, 367 F.Supp.2d 773, 777–78 (E.D. Pa. 2005) (imposing civil penalty of $25,000 despite SEC's request for $136,697 fine and defendant's "very serious" securities law violations due to defendant's negative net worth); *SEC v. Shah*, No. 92–Civ.–1952, 1993 WL 288285, at *6 (S.D.N.Y. July 28, 1993) (declining to impose any civil penalty due to other penalties imposed); *cf. SEC v. Lipson*, 129 F.Supp.2d 1148, 1159 (N.D. Ill. 2001), *aff'd*, 278 F.3d 656 (7th Cir. 2002) (imposing maximum penalty of $1,865,625, but noting CEO's net worth of over $100 million); *SEC v. Ferrero*, No. IP 91 271 C, 1993 WL 625964, at *19 (S.D. Ind. Nov. 15, 1993), *aff'd sub nom, SEC v. Maio*, 51 F.3d 623 (7th Cir. 1995) (imposing maximum penalty of $838,875, but noting defendant's testimony that $500,000 was "a very small part of his total net worth")."[4]

For the foregoing reasons Mr. Durant seeks leniency from this Court with respect to the imposition of a penalty and or an injunction. Moreover, Mr. Durant respectfully requests that the Court limit disgorgement to that which the SEC actually alleged.

Respectfully submitted

Gregory Morvillo
E. Scott Morvillo
Eugene Ingoglia
Nicole Eloret
*Attorneys for Defendant Benjamin Durant III*

---

[4] Payton's Letter at 2. (March 14, 2016) (DE 148).