UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,   :
                                      :          14 Civ. 4644
        Plaintiff,                    :
                                      :          MEMORANDUM ORDER
        -v-                           :          AND FINAL JUDGMENT
                                      :
DARYL M. PAYTON, and                  :
BENJAMIN DURANT, III,                 :
                                      :
        Defendants.                   :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        On February 29, 2016, a jury found defendants Daryl M.

Payton and Benjamin Durant, III liable for insider trading

charges brought by the U.S. Securities and Exchange Commission

(SEC). See Verdict, Dkt. 136. Specifically, the SEC had alleged

that in 2009, defendants Payton and Durant traded on material,

non-public information about IBM's pending acquisition of SPSS

Inc. ("SPSS"), see Amended Complaint, Dkt. 32 (Am. Compl.), ¶ 1,

and the jury so found. Following trial, the SEC and the

defendants submitted letters on the remedies that the Court, in

their view, should impose.

        In the SEC's letter dated March 7, 2016, Dkt. 144 ("SEC

Remedies Letter"), the SEC argues that the Court should impose

the following remedies: disgorgement of the proceeds of

defendants' illegal trades; payment of prejudgment interest on

disgorged funds; imposition of the maximum available civil

1

penalty three times the proceeds of defendants' illegal trades;
and an injunction against defendants from violating in the
future Section 10(b) of the Securities Exchange Act of 1934 and
Rule 10b-5 promulgated thereunder. SEC Remedies Letter at 1-4.
In terms of amounts, this means that the SEC seeks against Mr.
Payton disgorgement in the amount of $243,860.20, prejudgment
interest in the amount of $58,738.39, and a civil penalty of
$731,580.60; and against Mr. Durant, disgorgement in the amount
of $606,351.25, prejudgment interest in the amount of
$146,051.30, and a civil penalty of $1,819,053.75. Id.

In a letter dated March 14, 2016, Dkt. 147 ("Payton
Remedies Letter"), Mr. Payton requests that the Court order no
civil penalty and decline to grant the SEC's requested
injunction. Payton Damages Letter at 1. In a letter dated March
14, 2016, Dkt. 149 ("Durant Remedies Letter"), Mr. Durant
requests that the Court, if it grants disgorgement, limit this
amount to approximately $53,000 on the basis that this was the
amount alleged in the SEC's complaint and initial mandatory
disclosures; that the Court decline to grant an injunction; and
that the Court refrain from imposing the maximum civil penalty
of treble damages. Durant Remedies Letter at 1-4. In addition to
the initial letter briefs, the SEC, at the Court's direction,
responded on April 12, 2016 to Durant's argument that

2

disgorgement in his case should be limited to approximately
$53,000. See SEC Disgorgement Letter, Dkt. 165. These letters
have already been docketed. The defendants, also at the Court's
direction, submitted information on their finances: Mr. Payton
provided a financial statement, and Mr. Durant provided his 2015
tax return. These submissions will be docketed under seal.

Having considered all of the parties' submissions, the
Court hereby grants the SEC's request for disgorgement in the
amounts of $243,860.20 against Mr. Payton and $606,351.25
against Mr. Durant;[1] prejudgment interest in the amounts of
$58,738.39 against Mr. Payton and $146,051.30 against Mr.
Durant; and civil penalties in the amounts of $243,860.20
against Mr. Payton and $606,351.25 against Mr. Durant (i.e., one
time the amount of disgorgement). The Court also enjoins
defendants from future violations of Section 10(b) of the
Securities Exchange Act of 1934 and Rule 10b-5 promulgated
thereunder.

The reasoning behind these determinations is as follows. As
to disgorgement, the Second Circuit has stated that

---

[1] The SEC notes in its post-trial letter on remedies that the disgorgement
amounts it now seeks from the defendants ($243,860.20 from Mr. Payton and
$606,351.25 from Mr. Durant) are slightly lower than the actual profit
figures used at trial ($254,141.40 for Mr. Payton and $629,472.69 from Mr.
Durant). SEC Remedies Letter at 3 n.11. The SEC explains that the profit
figures at trial were calculated using the defendants' actual proceeds from
the liquidation of the securities, as opposed to the closing price of the
options on July 28, 2009. SEC Remedies Letter at 3 n.11.

> Disgorgement serves to remedy securities law
> violations by depriving violators of the fruits of
> their illegal conduct. Disgorgement is an equitable
> remedy, imposed to forc[e] a defendant to give up the
> amount by which he was unjustly enriched. By forcing
> wrongdoers to give back the fruits of their illegal
> conduct, disgorgement also has the effect of deterring
> subsequent fraud. . . . The district court has broad
> discretion not only in determining whether or not to
> order disgorgement but also in calculating the amount
> to be disgorged.

SEC v. Contorinis, 743 F.3d 296, 301 (2d Cir. 2014) (internal

citations and quotation marks omitted). In an insider trading

case, disgorgement may reasonably be calculated as the

difference between the price of the stock when purchased on the

basis of inside information and its price after that

information's public disclosure, multiplied by the number of

shares purchased. See SEC v. Warde, 151 F.3d 42, 50 (2d Cir.

1998). Disgorgement "need only be a reasonable approximation of

profits causally connected to the violation. . . . So long as

the measure of disgorgement is reasonable, any risk of

uncertainty should fall on the wrongdoer whose illegal conduct

created that uncertainty." Id. (internal quotation marks

omitted).

     In this case, the jury found that defendants Payton and

Durant committed insider trading in violation of the securities

laws. See Verdict. The parties have identified no basis – and

the Court sees none – to distinguish between the various SPSS

trades in terms of their legality. The Court therefore orders defendants Payton and Durant to disgorge all of their SPSS trading proceeds, which, according to the unchallenged figures provided by the SEC, are $243,860.20 for Mr. Payton and $606,351.25 for Mr. Durant. SEC Remedies Letter at 3; see SEC Remedies Letter, Exhibit A (Declaration of Dustin E. Ruta), Dkt. 144-1, ¶ 6.

Mr. Durant argues, however, that the Court should limit disgorgement in his case to approximately $53,000, on the ground that this was the amount alleged in the SEC's Amended Complaint and initial mandatory disclosures, Durant Remedies Letter at 1, citing SEC v. Svoboda, 409 F. Supp. 2d 331, 345 (S.D.N.Y. 2006), as opposed to the additional profits that he (concededly) realized from his numerous other trades in SPSS and that were effectively proved at trial.[2] See Pl. Exhibit 400. The Court declines to accept Mr. Durant's argument.

As an initial matter, it is far from clear that the SEC's Amended Complaint restricted the allegations of Mr. Durant's

---

[2] At the start of trial, Mr. Durant made a similar argument in a different context. He contended that the Court should preclude the SEC from using an opening demonstrative exhibit that alleged Mr. Durant had made approximately $629,000 trading in SPSS. Trial Transcript ("Tr.") 15:7-16:16. Mr. Durant claimed that the SEC should be restricted to arguing that Mr. Durant's illegal trades were the two trades specifically identified in the Amended Complaint, profits from which summed to approximately $53,000. Tr. 18:19-23. The Court overruled Mr. Durant's objection on the basis that since "everyone has been aware for some time of the larger amounts that are involved," notice pleading does not so restrict the SEC that they could not elicit the "broader trading." Tr. 19:2-12.

trading to the two trades with profits summing to approximately
$53,000. The Amended Complaint states that on or before July 1,
2009, Thomas Conradt (a colleague of defendants Payton and
Durant) told the defendants that Mr. Conradt's roommate, Trent
Martin, had told Mr. Conradt that SPSS was likely to be
acquired. Am. Compl. ¶ 70. The Amended Complaint then describes
an instant message conversation between defendants Payton and
Durant on July 1, 2009, in which Mr. Durant indicates that he
bought SPSS options and will "buy in" slowly that week and the
next. Id. ¶¶ 71-72. Against this background, the Amended
Complaint states: "After Conradt told defendant Durant the
Inside Information, Durant purchased SPSS securities, ultimately
making more than $53,000 on these trades. The chart below
details Durant's purchases." Id. ¶ 75. That chart contains the
two transactions executed on July 21, 2009 and July 22, 2009,
respectively, the proceeds of which total approximately $53,000.
Id.

The Amended Complaint's statement that Mr. Durant
"ultimately [made] more than $53,000 on these trades," Am.
Compl. ¶ 75, when read in the context of the Amended Complaint's
broad description of Mr. Durant's trading, undercuts any
assertion that the Amended Complaint clearly restricts its
allegations about Mr. Durant's trading to the two trades on

6

which he made approximately $53,000. The Amended Complaint also
asks the Court to "[g]rant such other and further relief as this
Court may deem just, equitable, or necessary in connection with
the enforcement of the federal securities laws and for the
protection of investors." Id. at page 22. But even if the SEC's
Amended Complaint were read to allege only trading with illicit
gains of approximately $53,000, the SEC was not required to
identify in its complaint the precise amount of disgorgement
that it sought. See, e.g., SEC v. Zwick, 03-cv-2742, 2007 WL
831812, at *24 (S.D.N.Y. Mar. 16, 2007); SEC v. Boock, No. 09-
cv-8261, 2015 U.S. Dist. LEXIS 95690, at *31-32 (S.D.N.Y. June
30, 2015) (Report & Recommendation adopted July 21, 2015, as
corrected, July 31, 2015); Fed. Trade Comm'n v. Cephalon, Inc.,
100 F. Supp. 3d 433, 439 (E.D. Pa. 2015). In any SEC enforcement
action, the determination of remedies is for the Court and the
jury only determines liability. In this case, the full amount of
disgorgement flows directly from the jury's holding.

Furthermore, Mr. Durant cannot show any prejudice from the
fact that the SEC did not specify additional trades in the
Amended Complaint. During discovery, Mr. Durant sought "[a]ll
[his] trading records during his time at EuroPacific." SEC
Disgorgement Letter, Exhibit 2, Dkt. 165-2. At Mr. Durant's
deposition on May 14, 2015, the SEC questioned him about his

7

SPSS trading in June and July 2009, with no restriction to the trades mentioned in the Amended Complaint, and Mr. Durant testified that he made "[s]omewhere around $600,000" trading on SPSS. SEC Disgorgement Letter, Exhibit 3, Dkt. 165-3, 217:15-219:10, 246:1-254:8, 257:21-25. Mr. Durant also testified at trial that he made $600,000 trading in SPSS and that he did not report these gains on his tax return because he did not believe it was certain whether he would be able to keep them. Tr. 756:5-759:7. The SEC's pretrial disclosures, exhibit list, and summary exhibits further signaled to Mr. Durant that all of his SPSS trading was at issue. See SEC Disgorgement Letter, Exhibit 4, Dkt. 165-4; SEC Rule 26(a)(3) disclosures, Dkt. 64.

It is apparent, then, that Mr. Durant was on notice that the SEC intended to pursue more than $53,000 in illegal gains as disgorgement, should the SEC prevail at trial. To accept Mr. Durant's argument that the SEC should be restricted to the two trades specifically listed in the Amended Complaint would be to grant Mr. Durant a significant undeserved windfall. Such a move would frustrate disgorgement's functions of denying to violators of the securities laws the "fruits of their illegal conduct" and "mak[ing] lawbreaking unprofitable for the law-breaker." Contorinis, 743 F.3d at 301. The Court hence concludes that Mr.

8

Durant is responsible for disgorgement in the amount of $606,351.25.

As to prejudgment interest, this remedy "prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." SEC v. Haligiannis, 470 F. Supp. 2d 373, 385 (S.D.N.Y. 2007) (internal quotation marks omitted). Specifically, prejudgment interest must be paid, in accordance with the SEC's unchallenged calculations, in the amount of $58,738.39 from Mr. Payton and $146,051.30 from Mr. Durant.

As to the civil penalty, the Insider Trading Sanctions Act provides that "[t]he amount of the penalty which may be imposed on the person who committed such violation [of the insider trading laws] shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication." 15 U.S.C. § 78u-1(a)(2). To elaborate:

> Civil penalties are designed to punish the individual violator and deter future violations of the securities laws. . . . In determining whether civil penalties should be imposed, and the amount of the fine, courts look to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or

9

recurrent; and (5) whether the penalty should be
reduced due to the defendant's demonstrated current
and future financial condition.

Haligiannis, 470 F. Supp. 2d at 386.

Here, the Court finds that these factors support a civil
penalty of one times the amount of disgorgement as to each
defendant. The defendants were professionals in the securities
industry. Tr. 674:9-680:21, 424:11-433:18. They certified that
they had knowledge of their employer's prohibition on insider
trading. See Tr. 428:22-431:9, 681:19-24. In fact, at trial, Mr.
Payton testified that he "did feel that [he] had a good
understanding of what insider trading was," Tr. 432:8-9, and Mr.
Durant testified that he had to learn about regulations on
insider trading for certifications he had passed. Tr. 680:14-21.
Additionally, the defendants took steps to conceal their
activities related to the SPSS trades, such as lying on a
questionnaire provided by their employer about where they
received information on SPSS. See Tr. 540:24-546:14, 760:10-
763:21.[3] These features of defendants' situation favor the
imposition of a civil penalty.

However, the defendants' challenging financial
circumstances, as indicated in Mr. Durant's tax return and Mr.
Payton's financial statement provided to the Court on April 12,

---

[3] In the Court's view, both defendants also lied on the stand at trial.

2016, suggest that the full available penalty of treble damages would be too harsh a remedy: they will have difficulty paying now and their future prospects should not be clouded by a financial burden of such magnitude. Therefore, taking all the "facts and circumstances" into account, the Court hereby orders the defendants to pay a civil penalty equal to one times the amount of their required disgorgement, i.e., $243,860.20 for Mr. Payton and $606,351.25 for Mr. Durant.

As to injunctive relief, this remedy "is expressly authorized by Congress to proscribe future violations of federal securities laws. The SEC must demonstrate that there is a substantial likelihood" of future violations of the securities laws. SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998) (internal footnotes omitted); see 15 U.S.C. § 78u(d). To determine whether the standard for injunctive relief has been met, "[t]he court looks at the following factors: the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an 'isolated occurrence;' whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated." Cavanagh, 155 F.3d at 135.

11

Here, the defendants have been found liable for insider trading and, as noted supra, were familiar with industry prohibitions on this practice. Both defendants placed multiple trades in SPSS. See Plaintiff's Exhibits 400, 402. The defendants' doubtful testimony also suggests they have not remotely absorbed the magnitude of their misconduct, see, e.g., Tr. 1027:1-4; 977:7-15. All told, then, the defendants' "fraudulent past conduct gives rise to an inference of a reasonable expectation of continued violations." SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972).

It is true that neither defendant is currently employed in the securities industry. See Payton Letter at 3; Durant Letter at 2-3. However, the Court is very far from assured that the defendants will not again find themselves in a position to trade on material non-public information. Furthermore, as the history of this very case illustrates, one need not be employed in the securities industry in order to gain access to material non-public information. Therefore, the Court hereby imposes a permanent injunction on defendants Payton and Durant, enjoining them from future violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

For the foregoing reasons, the Court hereby enters Final Judgment as follows: Mr. Payton is liable for disgorgement of $243,860.20, together with prejudgment interest thereon in the amount of $58,738.39, and a civil penalty in the amount of $243,860.20 pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1], for a total of $546,458.79. Mr. Durant is liable for disgorgement of $606,351.25 in disgorgement, together with prejudgment interest thereon in the amount of $146,051.30, and a civil penalty in the amount of $606,351.25, for a total of $1,358,753.80. Payment is to be made at the rate of 20% of each defendant's gross monthly income beginning with June 2016, with each payment to be made no later than two weeks after the end of the month. Thus, the first payment, covering the month of June 2016, must be made no later than July 14, 2016. In this connection, the defendants will supply the SEC, immediately upon request, with any and all financial information requested by the SEC. The defendants are also enjoined from future violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

Clerk to enter judgment and to close the case.

SO ORDERED.

Dated:     New York, NY
           May 15, 2016                              JED S. RAKOFF, U.S.D.J.

13